**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE SCHERING-PLOUGH / MERCK MERGER LITIGATION | Civil Action No.: 09-1099 (DMC)(MF) |

-------------------------------------------------------------------------------------------------------------------

**CLASS PLAINTIFF'S MEMORANDUM IN SUPPORT OF**
**FINAL APPROVAL OF PROPOSED CLASS SETTLEMENT AND**
**IN OPPOSITION TO MOTION FOR SANCTIONS**

-------------------------------------------------------------------------------------------------------------------

James E. Cecchi
Lindsey H. Taylor
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO
5 Becker Farm Rd.
Roseland, New Jersey 07068
(973) 994-1700
Co-Lead Counsel for Plaintiff

Jay W. Eisenhofer
Keith Fleischman
GRANT & EISENHOFER P.A.
485 Lexington Avenue
New York, New York  10017
(646) 722-8500
Co-Lead Counsel for Plaintiff

Christopher A. Seeger
Stephen A. Weiss
Diogenes P. Kekatos
SEEGER WEISS LLP
One William Street
New York, New York  10004
(212) 584-0700
Plaintiff's Liaison Counsel

**TABLE OF CONTENTS**

Table of Authorities ........................................................................................................iii

Preliminary Statement.....................................................................................................1

Factual Background ........................................................................................................2

      a)     Procedural history ................................................................................2

      b)     Plaintiff's claims and facts arising after the Merger was announced .......................3

      c)     Discovery .............................................................................................5

      d)     The Settlement .....................................................................................5

Legal Argument

Point One     The Settlement Class Should Be Certified.............................................8

      a)     Standard Of Review...............................................................................8

      b)     Class Certification Should Be Granted
               For Settlement Purposes Under Rule 23 .................................................9

      c)     The Proposed Class Satisfies the Criteria of Rule 23(a)...........................10

           1)     Numerosity ................................................................................10

           2)     Commonality .............................................................................11

           3)     Typicality .................................................................................11

           4)     Adequacy ..................................................................................12

      d)     The Proposed Class Satisfies the Criteria of Rule 23(b)...........................13

Point Two     The Proposed Settlement Is Fair, Reasonable And
              Adequate, Meriting Preliminary Court Approval .....................................16

      a)     The *Girsch* Factors...............................................................................16

           1)     Complexity, Expense, and Likely Duration of the Litigation.......................16

           2)     The Reaction of the Class to the Settlement .................................17

3)    The Stage of Proceedings and
      the Amount of Discovery Completed ............................................17

4)    Risks of Establishing Liability...................................................18

5)    Risks of Establishing Damages...................................................20

6)    Risks of Maintaining Class Action Status Through Trial ............................21

7)    Ability to Withstand Greater Judgment ........................................22

8/9)  The Range of Reasonableness of the Settlement
      Fund in Light of the Best Possible Recovery and
      All the Attendant Risks of Litigation..........................................22

b)    Transmission of the Notice of Settlement to the Class
      Satisfied both the Court's Preliminary Order and Applicable Law .........................25

Point Three    The Objections To The Settlement Should Be Overruled .........................27

Point Four     Class Counsel Are Entitled To The Fees Provided In The Settlement Agreement ...30

a)    The Litigation Conferred Substantial Benefits On The Class ...................................30

b)    The Requested Fee Was Negotiated Through Mediation .........................................31

c)    The Requested Fee Is Reasonable Considering
      The Efforts of Counsel And The Time Spent On the Case.......................................32

Conclusion ...........................................................................................35

# TABLE OF AUTHORITIES

## Cases

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1998) .................................................. 9

*Augenbuam v. Forman*, 2006 WL 1716916 (Del. Ch. June 21, 2006) ......................... 24

*Baby Neal v. Casey*, 43 F.3d 48 (3d Cir. 1994) .......................................................... 11

*Barnes v. American Tobacco, Inc.*, 161 F.3d 127 (3d Cir. 1998) ........................... 10, 11

*Benihana of Tokyo, Inc. v. Benihana, Inc.*, 891 A.2d 150 (Del. Ch. 2005) ................. 21

*Casey v. Brennan*, 344 N.J.Super. 83 (App. Div. 2001) ............................................. 19

*Dragon v. Perelman*, C.A. No. 15101 (Del. Ch. Aug. 29, 1997) ................................ 33

*Eisenberg v. Chicago Milwaukee Corp.*, 1988 WL 112910 (Del. Ch. Oct. 25, 1988) .......... 24, 30

*Fat T, Inc. v. Aloha Tower Assoc. Piers 7, 8, and 9*, 172 F.R.D. 411 (D. Hawaii 1996) ............ 28

*Franklin Balance Sheet Inv. Fund v. Crowley*, 2007 WL 2495018 (Del. Ch. 2007)................... 33

*Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975)....................................................... 16, 22

*Globis Capital Partners v. Safenet*, No. 2772-VCS (Del. Ch. Dec. 20, 2007)............................ 34

*Guth v. Loft, Inc.*, 5 A.2d 503 (Del. 1939).................................................................. 21

*In re Cendant Corp. Litig.*, 264 F.3d 201 (3d Cir. 2001)........................................... passim

*In re Cmty. Bank of N. Virginia*, 418 F.3d 277 (3d Cir. 2005) ..................................... 9

*In re Diet Drugs*, 582 F.3d 524 (3d Cir. 2009).......................................................... 30

*In re Digex, Inc. S'holder Litig.*, C.A. No. 18336 (Del. Ch. Apr. 6, 2001) ................. 34

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995)................................................................................. passim

*In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004) ........................... 27

*In re Ikon Office Solutions, Inc. Securities Litigation*, 191 F.R.D. 457 (E.D.Pa. 2000).............. 10

*In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241 (3d Cir. 2009).................................. 33

*In re Lear Corp. Shareholder Litig.*, 926 A.2d 94 (Del. Ch. 2007).................................... 25

*In re Lin Broadcasting Corp. S'holders Litig.*, C.A. No. 14039 (Del. Ch. Sept. 15, 1995) ........ 34

*In re Managerial, Professional and Technical Employees Antitrust Litigation*,
    2006 WL 38937 (D.N.J. 2006). ......................................................................... 10

*In re NCS Healthcare S'holders Litig.*, 2003 WL 21384633 (Del. Ch. 2003) ........................... 33

*In re Netsmart Tech., Inc. Shareholder Litig.*, 924 A.2d 171 (Del. Ch. 2007) ........................... 25

*In re New York Stock Exchange/Archipelago Merger Litigation*,
    No. 601646/05 (N.Y. Sup. Ct. Feb. 21, 2006) ...................................................... 31

*In re Prodigy Commc'ns S'Holders Litig.*, 2002 WL 1767543 (Del. Ch. 2002)....................... 32

*In re Prudential Insurance Co. of Am. Sales Practices Litig.*,
    148 F.3d 283 (3d Cir. 1998).............................................................................. passim

*In re Prudential Insurance Co. of America Sales Practices Litigation*,
    962 F.Supp. 450 (D.N.J. 1997) ..................................................................... 10, 25

*In re Sch. Asbestos Litig.*, 921 F.2d 1330 (3d Cir. 1986)............................................. 9

*In re Schaefer Salt Recovery, Inc.*, 542 F.3d 90 (3d Cir. 2008).................................... 28

*In re Telik, Inc. Sec. Litig.*, 576 F.Supp.2d 570 (S.D.N.Y. 2008)................................. 27

*In re The DirecTV Group, Inc. S'holder Litig.*, C.A. No. 4581 (Del Ch. Nov. 30, 2009).......... 31

*In re WorldCom, Inc. Sec. Litig.*, 388 F.Supp.2d 319 (S.D.N.Y. 2005) ........................... 27

*In Re: Mony Group Inc. S'Holders Litig.*, C.A. No. 20554 (Del. Ch. Oct. 2, 2004).................. 31

*Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178 (3d Cir. 2001) ................................ 11

*Joy Mfg. Corp. v. The Pullman-Peabody Co.*, 742 F. Supp. 911 (W.D. Pa. 1990) ..................... 32

*MacAndrews & Forbes Holdings, Inc. v. Revlon, Inc.,*  501 A.2d 1239 (Del. Ch. 1985) ............ 19
*Malpiede v. Townson,* 780 A.2d 1075 (Del. Ch. 2001) ................................................................. 19
*Mark Indus., Ltd. v. Sea Captain's Choice, Inc.*, 50 F.3d 730 (9th Cir. 1995) ........................... 28
*Merola v. Atlantic Richfield Co.*, 515 F.2d 165 (3d Cir. 1975) ................................................... 30
*Mills v. Elec. Auto-Lite*, 396 U.S. 375 (1970) ............................................................................. 30
*Minneapolis Firefighters Relief Assoc. v. Ceridian Corp.*,
    C.A. No. 29660 (Del. Ch. Mar. 24, 2009) ............................................................................ 31
*Municipal Police Employees' Ret. Sys. v. Crawford*, C.A. No. 2635 (Del. Ch. June 8, 2007) .... 34
*New Directions Treatment Serv. v. City of Reading*, 490 F.3d 293 (3d Cir. 2007) ..................... 13
*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154 (3d Cir. 2001) ............... 11
*NY News, Inc. v. Kheel*, 972 F.2d 482 (2d Cir. 1992) .................................................................. 28
*Pogostin v. Leighton*, 216 N.J.Super. 363 (App. Div. 1986) ....................................................... 19
*Revlon, Inc. v. MacAndrews & Forbes Holdings, Inc.*, 506 A.2d 173 (Del. 1986) ...................... 19
*Serio v. Wachovia Securities, LLC*, 2009 WL 900167 (D.N.J. 2009) .......................................... 14
*Stewart v. Abraham*, 275 F.3d 220 (3d Cir. 2001) ...................................................................... 10
*Tandycrafts, Inc. v. Initio Partners*, 562 A.2d 1162 (Del. 1989) ................................................ 30
*Thomas v. SmithKline Beecham Corp.*, 201 F.R.D. 386 (E.D.Pa. 2001) ..................................... 14
*Villari v. Elec. Data Sys. Corp.*, C.A. No. 3786 (Del. Ch. Dec. 30, 2008) .................................. 31
*Wayne Co. Employees' Retirement Sys. v. Corti*, 954 A.2d 319 (Del. Ch. 2008) ....................... 19
*Weber v. Gov't Employees Ins. Co.*, 262 F.R.D. 431 (D.N.J. 2009) ............................................ 32
*West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970), *aff'd*, 440 F.2d
    1079 (2d Cir. 1971) ............................................................................................................. 19

**Rules**

Fed.R.Civ.P. 11 ............................................................................................................................ 28
Fed.R.Civ.P. 23 ...................................................................................................................... passim

## PRELIMINARY STATEMENT

Class Counsel believe this Settlement to be an excellent result under all the circumstances. The proposed settlement was negotiated at arm's-length by highly experienced counsel on both sides. The Settlement provides for a valuable result to all Schering-Plough shareholders and for more complete information to the shareholders that allowed them to make a fully-informed decision on the merits of the Schering/Merck merger.

For the reasons set forth below, Plaintiff respectfully requests that the Court grant final approval to the Settlement. Further, the motion for sanctions filed by Objector Allan Marain is frivolous and should be denied.

## FACTUAL BACKGROUND

On March 9, 2009, Schering-Plough Corporation ("Schering-Plough") and Merck & Co., Inc. ("Merck"), announced that their respective boards of directors had unanimously approved an agreement and plan of merger (the "Merger Agreement") under which the two companies would be combined (the "Merger"). Under the terms of the Merger, Schering-Plough, which would continue as the surviving public corporation, would be renamed Merck & Co., Inc. ("New Merck"); Merck would become a wholly-owned subsidiary of New Merck; Schering-Plough shareholders would receive $10.50 in cash and 0.5767 of a share of New Merck common stock for each share of Schering-Plough common stock they hold; and Merck shareholders would receive one share of common stock of New Merck for each share of Merck common stock they hold.  The transaction was valued at approximately $41.1 billion.

a)      **Procedural history**

Actions seeking to block the Merger were filed against Schering-Plough and its board of directors (the "Board") beginning on March 10, 2009, in both the Superior Court of New Jersey, Union County ("Superior Court"), and the United States District Court for the District of New Jersey ("District Court").  In total, 11 cases were filed in the Superior Court.  Seven plaintiffs filed actions in the Law Division (*Plotkin*, *Zank*, *Rosenberg*, *Clark*, *Rubery*, *Murphy*, and *Gordone*), while four complaints were filed in the Chancery Division (*Pirelli Armstrong Tire Pension Fund*, *Manson*, *Erste-Sparinvest*, and *City of Dearborne Heights Retirement System*) (collectively, the "State Actions").  An additional four cases were filed in District Court: *Landesbank Berlin Investment*, *Husarsky*, *Louisiana Municipal Employees Retirement System* ("*LAMPERS*"), and *City of Edinburgh/Lothian Pension Fund* (collectively, the "Federal Actions").

On April 30, 2009, the Court entered an Order appointing Carella Byrne and Grant & Eisenhofer as co-lead counsel, with Seeger Weiss as liaison counsel (collectively, "Class Counsel"), in the District Court action and, in a separate Order, consolidated all of the Federal Actions.  On June 1, 2009, the Court denied the *Plotkin* plaintiffs' motion to abstain in favor of the Superior Court actions based upon *Colorado River* abstention, and held that it would retain jurisdiction over the now-consolidated Federal Actions. In light of the Court's decision to continue with the Federal Actions, the Chancery Division dismissed the State Actions by way of Order, also dated June 1, 2009.

**b)      Plaintiff's claims and facts arising after the Merger was announced**

The complaints in all of the actions generally alleged that the Schering board members had breached their fiduciary duties to shareholders by approving the Merger, because the terms of the Merger were insufficiently favorable to Schering's shareholders and/or the Board had failed to perform appropriate due diligence before approving the Merger. Throughout the litigation they denied any wrongdoing in connection with the Merger.

Three days after the announcement of the Merger, on March 12, 2009, an article appeared in *Lancet*, a prestigious medical journal, reporting on a favorable clinical trial for TRA, a drug which Schering had "in the pipeline" and expected to be a potential blockbuster drug.  On the day after the announcement of the publication of the *Lancet* article, Merck's stock jumped 12.4%.

On May 20, 2009, Schering and Merck issued a joint preliminary proxy statement on SEC Form S-4 (the "May S-4") that purported to disclose to shareholders all material aspects of the Merger, including the process that lead up to the Board of Directors' approval of it.

On June 3, 2009, Class Counsel filed a consolidated complaint (the "Consolidated Complaint") which generally repeated the allegations contained in the initial complaints and added allegations concerning (a) the timing of the Merger announcement relative to the March 12, 2009 *Lancet* article about TRA;[1] (b) alleged incomplete and materially misleading disclosures in the May S-4; and (c) severance payments to Schering executives.

On June 16, 2009, Schering and Merck filed an amended S-4 (the "June S-4"), which contained additional disclosures from the May S-4.  For instance, the June S-4 disclosed the fees to be received by Schering's and Merck's financial advisers, Goldman, Sachs & Co. ("Goldman") and Morgan Stanley & Co., Incorporated ("Morgan Stanley"), including the percentage of their respective fees that was contingent upon consummation of the Merger. Schering also disclosed the existence of the pending arbitration relating to Remicade and golimumab, which was filed by a subsidiary of Johnson & Johnson ("J&J") with respect to a distribution agreement with a subsidiary of Schering-Plough, giving the Schering subsidiary the right to distribute these products.[2]

---

[1] The Consolidated Complaint alleged that the timing of the announcement was material to the relative value of Merck's offer to Schering shareholders.  The Consolidated Complaint alleged that, had the *Lancet* article appeared before the announcement of the Merger, Schering's shareholders, rather than Merck's, would have benefitted from the announcement.  Class Counsel's economic experts estimated this would have resulted in a 2.7% discount to Schering shareholders rather than the announced 34% premium.

[2] The disclosure of this arbitration was material because the Remicade distribution agreement, which was worth more than $2 billion per year to Schering-Plough, provided that it could be terminated by one party if the other party underwent a "change of control."  J&J contended that the Merger constituted a "change of control," giving it the right to terminate the distribution agreement.  In Merck's 2010 annual report, filed on March 1, 2010, Merck stated that an adverse decision in this arbitration would have a material adverse affect on Merck's business.

- 4 -

c)    <u>Discovery</u>

Immediately after the Consolidated Complaint was filed, Class Counsel and Defendants' counsel agreed upon an accelerated discovery and briefing schedule for a possible preliminary injunction motion to stop the vote on Merger, which was estimated to be held during the first week of August 2009.   Defendants agreed to produce documents on a rolling basis, and depositions where scheduled so that an application for a preliminary injunction could be filed and ruled upon by the end of July 2009.

As part of the discovery process, Class Counsel reviewed more than 180,000 pages of documents, including Board meeting minutes, Goldman and Morgan Stanley presentations and deal evaluations, and internal communications from Schering, and reviewed this information with their experts.   In addition, Class Counsel deposed Fred Hassan, Schering's CEO and Chairman, and Patricia Russo, Schering-Plough's lead independent director.

The information provided in discovery tended to confirm Schering's representations in the May S-4 that its Board of Directors considered alternative merger partners other than Merck, and negotiated the merger agreement in good faith and on an arm's-length basis.   The documentary evidence and depositions also confirmed that Schering's board had not considered the timing of the release of the *Lancet* article relative to the timing of the announcement of the Merger.

d)    <u>The Settlement</u>

Throughout the discovery process, Class Counsel and Defendants' counsel discussed potential resolutions of the claims asserted in the Consolidated Complaint.   Based upon the information provided in discovery, Class Counsel believed that the best potential result would be a preliminary injunction preventing a vote on the Merger until additional disclosures were made

to shareholders.  In order to resolve the claims, Defendants agreed to make additional disclosures in advance of the shareholder vote on the Merger.

On July 24, 2009, Schering-Plough published a SEC Form 8-K (the "8-K") which addressed, among other things, Class Counsel's claims concerning the *Lancet* announcement. Specifically, the 8-K showed shareholders the movement of Merck's stock price subsequent to the *Lancet* announcement, and made the following disclosure:

> Schering-Plough confirms that it did not consider the Lancet article specifically, or the timing of its publication, in connection with the board of directors' decision to approve the transaction with Merck or the timing of such approval or the timing of the announcement of the proposed merger with Merck. Further, Schering-Plough did not request or instruct its financial advisors, Goldman, Sachs & Co. and Morgan Stanley & Co., Incorporated, to consider the fact or timing of the publication of the Lancet article in connection with completion of their work in the rendering of their respective fairness opinions.

Schering also included in the 8-K a table setting forth Schering and Merck's stock prices on the days immediately before and after the announcement of the Merger, a timeline of major disclosures of results in the TRA trials, and provided additional information relating to consideration of other potential suitors and the negotiation of "deal protection" provisions in the Merger agreement.  In addition, Schering included a copy of the Consolidated Complaint as an exhibit, Exhibit 99.1, to the 8-K.  Defendants continued to deny any wrongdoing, and the 8-K specifically stated that the additional disclosures were not required by any law or regulation.

On August 7, 2009, Schering shareholders voted overwhelmingly to approve the Schering-Plough/Merck Merger, with 99.1% of votes cast in favor of the transaction.

The parties moved for preliminary approval of the Settlement on December 2, 2009.  On December 4, 2009, the Court entered an order preliminarily approving the Settlement, preliminarily certifying a Settlement Class, and directing that notice of the Settlement be

distributed to the Class.   In accordance with the terms of the Preliminary Approval Order, Defendants provided direct mail notice to the Class, over 450,000 Schering shareholders.

As of the deadline for filing objections, March 3, 2010, only five Class members objected to the Settlement, representing a miniscule .00001% of the Class.   None of those objections are meritorious, for the reasons set forth below.

**ARGUMENT**

**POINT ONE**

**THE SETTLEMENT CLASS
SHOULD BE CERTIFIED**

Plaintiff respectfully requests that a Class be certified for settlement purposes pursuant to

Fed.R.Civ.P. 23(b)(1) and (b)(2). For the reasons set forth below, certification under these Rules

is appropriate because Schering could be subjected to differing standards of conduct if claims of

individual class members were prosecuted on an individual basis, and because the relief sought

in the Settlement is exclusively injunctive and declaratory.[3]

a)      **Standard of Review**

"There is an overriding public interest in settling class action litigation, and it should

therefore be encouraged." *In re Warfarin Sodium Antitrust Litig*., 391 F.3d 516, 535 (3d Cir.

2004); *see also In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d

---

[3]      Objector Allan Marain argues that class certification should not be granted, but does not address any of the factors for class certification under Rule 23 or why those factors are not satisfied in this case. Rather, he argues conclusorily that class certification should be denied to prevent Class Counsel from getting paid. (Marain Objection at 4-5). Taking Mr. Marain's claim at face value that he is attempting to protect Defendants from unnecessary legal expenses, his suggestion that the class not be certified is counterproductive to that professed goal. If the class is certified, then all claims of all shareholders will be resolved. On the other hand, if the Class is not certified, but only Plaintiff's claims are dismissed, as Mr. Marain suggests, there will remain 14 other filed actions in queue behind this one. Counsel in those cases would be free to pursue those claims if they chose and it is entirely possible that, in their judgment, it could be worthwhile to pursue one or more of the other cases. If the Class is not certified, as Mr. Marain suggests, the result would be to substantially increase the potential costs to the Company, and thus would be contrary to the very goal Mr. Marain professes to promote. Also, this objection would be more appropriately addressed in connection with a fee request, but even then it does not address any of the factors set forth in *Gunter v. Ridgewood Entergy Corp.*, 223 F.3d 190, 195, n. 1 (3d Cir. 2000), which a court considers in analyzing a fee request. *See, e.g., In re Merck & Co., Inc. Vytorin Erisa Litig.*, 2010 WL 547613, at *6 (D.N.J. 2010); *Nichols v. Smithkline Beecham Corp.*, 2005 WL 950616 (E.D.Pa. 2005) (overruling objection to fee request where "objections . . . do not take into consideration any of the *Gunter* factors which the Court must consider in analyzing a fee request.").

768, 785 (3d Cir. 1995) ("the law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation"); *In re Sch. Asbestos Litig.*, 921 F.2d 1330, 1333 (3d Cir. 1986) (noting Third Circuit's policy of "encouraging settlement of complex litigation that otherwise could linger for years"); *In re Cmty. Bank of N. Virginia*, 418 F.3d 277, 299 (3d Cir. 2005) ("all Federal Circuits recognize the utility of … 'settlement classes' as a means to facilitate the settlement of complex nationwide class actions").

In certifying a class for settlement purposes, "a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1998). Undiluted attention to the remaining requirements is of vital importance. *Id.*

**b)      Class Certification Should Be Granted**
**         For Settlement Purposes Under Rule 23**

Class certification under Rule 23 has two primary components. First, the party seeking class certification must first establish the four requirements of Rule 23(a): "(1) numerosity ('a class [so large] that joinder of all members is impracticable'); (2) commonality ('questions of law or fact common to the class'); (3) typicality (named parties' claims or defenses 'are typical . . . of the class'); and (4) adequate representation (representatives 'will fairly and adequately protect the interests of the class')." *Warfarin Sodium*, 391 F.3d at 527; *see also Amchem*, 521 U.S. at 613.

Second, the Court must find that the class fits within one of the three categories of class actions set forth in Fed.R.Civ.P. 23(b). *Cmty. Bank*, 418 F.3d at 302.  In the present case, the Plaintiff seeks certification under Rule 23(b)(1) and (2).  Rule 23(b)(1) allows certification of a class if:  a) prosecuting separate actions would create a risk of inconsistent judgments which

would establish incompatible standards of conduct for the party opposing the class or b) if adjudicating the claims of individual class members would, as a practical matter, be dispositive of the interests of non-party class members or impede their abilities to protect their own interests. Rule 23(b)(1) defines two types of class actions designed to prevent prejudice to parties arising from multiple potential suits involving the same subject matter. *In re Managerial, Professional and Technical Employees Antitrust Litigation*, 2006 WL 38937 at *4 (D.N.J. 2006). The difference between the two subsections is that Rule 23(b)(1)(A) focuses on possible prejudice to the defendants while Rule 23(b)(1)(B) focuses on possible prejudice to the plaintiffs. *In re Ikon Office Solutions, Inc. Securities Litigation*, 191 F.R.D. 457, 466 (E.D.Pa. 2000). Rule 23(b)(2) allows certification of a class where the party opposing the class has acted or refused to act in a manner generally applicable to the class, so that final injunctive or declaratory relief would be appropriate with respect to the class as a whole. Rule 23(b)(2) classes are limited to class actions seeking primarily injunctive or declaratory relief. *Barnes v. American Tobacco, Inc.*, 161 F.3d 127, 142 (3d Cir. 1998).

c)      **The Proposed Class Satisfies the Criteria of Rule 23(a)**

       1)      **Numerosity**

"To meet the numerosity requirement, class representatives must demonstrate only that common sense suggests that it would be difficult or inconvenient to join all class members." *In re Prudential Insurance Co. of Am. Sales Practices Litig.*, 962 F.Supp. 450, 510 (D.N.J. 1997), *aff'd*, 148 F.3d 283 (3d Cir. 1998); *see also Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001) (numerosity requirement satisfied "if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40"). There are many thousands of Schering shareholders, owning over 1.6 billion shares of stock. Thus, the numerosity requirement is met.

2)      **Commonality**

"Rule 23(a)(2)'s commonality element requires that the proposed class members share at least one question of fact or law in common with each other."  *Warfarin Sodium*, 391 F.3d at 527-28.  "Because the [commonality] requirement may be satisfied by a single common issue, it is easily met." *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994).

Here, Plaintiff is asserting claims on behalf of all Schering shareholders.  Defendants acted on a common basis with respect to all shareholders. What proved to be the ultimate issue in the case was whether Schering gave adequate disclosure of information needed by shareholders to vote on the Schering/Merck merger.  Defendants gave (or did not give) the same disclosures to all shareholders.  Thus, whether the disclosures which were given were adequate was a common issue for all shareholders.

3)      **Typicality**

In considering typicality under Rule 23(a)(3), the court must determine whether "the named plaintiffs' individual circumstances are markedly different or . . . the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based." *Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178, 184 (3d Cir. 2001). Typicality does not require that all class members share identical claims. *Id.*  So long as "the claims of the named plaintiffs and putative class members involve the same conduct by the defendant, typicality is usually established regardless of factual differences." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 183-84 (3d Cir. 2001). "The concepts of commonality and typicality are broadly defined and tend to merge." *Barnes*, 161 F.3d at 141.

Here, Plaintiff's circumstances are exactly the same as all other Schering shareholders and the legal theory upon which its claims are based are exactly the same as that of other

Schering shareholders.  Indeed, the reason that Plaintiff's claims are typical is the same reason why there are common issues.  Defendants acted or failed to act in the same manner identically with respect to all shareholders.

        **4)**      <u>**Adequacy**</u>

The adequacy requirement has two components intended to ensure that the absentees' interests are fully pursued:  (a) the named plaintiffs' interests must be sufficiently aligned with the interests of the absentees, and (b) the plaintiffs' counsel must be qualified to represent the class. *GM Trucks*, 55 F.3d at 800.

A named plaintiff is "adequate" if his interests do not conflict with those of the Class. *Prudential*, 148 F.3d at 312;  *Lewis v. Curtis,* 671 F.2d 779, 788 (3d Cir. 1982).  Here, Plaintiff received the same disclosures and received the same consideration under the Merger as all other shareholders, would have to prove the same facts as any other shareholder to establish its claims, and has precisely the same interest and incentive as any other shareholder to pursue claims related to the Merger.  *See Prudential*, *id.* at 313 ("As discussed, the crux of this class action is the allegation that Prudential engaged in a scheme to defraud policyholders by means of company-wide deceptive sales practices. The named parties, like the members of the class, would need to establish this scheme in order to succeed on any of the claims in the Second Amended Consolidated Complaint. Even those class members with 'other' claims share the common task of demonstrating the existence and implementation of this scheme.  Consequently, we believe the proposed class satisfies the adequacy of representation requirement of Rule 23(a).")

As far as the adequacy of counsel is concerned, the Class is represented by law firms with national reputations in the class action field. This Court previously reviewed and considered, and

is thus acquainted with, the relevant qualifications and experience of the undersigned firms appointed to serve in leadership roles. This Court has seen their work on behalf of the Class, in this and other cases, as was set forth in their motion for appointment as Interim Class Counsel. This proven track record demonstrates their ability to prosecute this class action with vigor. *New Directions Treatment Serv. v. City of Reading*, 490 F.3d 293, 313 (3d Cir. 2007). Thus the adequacy requirement is satisfied.

Objector Allan Marain contends that Class Counsel has a conflict with the Class [Docket Entry 64-2, at 5], but it is not entirely clear what that conflict is. As best as Class Counsel can determine, Mr. Marain contends that there is a conflict because Class members are being asked to indirectly[4] pay for Class Counsel's fees. If seeking payment of fees from one's client constitutes a "conflict" then no attorney could ever represent a client in return for money, since any expectation that the client should pay a fee would result in a conflict of interest. The proposition that Class Counsel has a conflict with the Class because it is seeking payment of fees is facially absurd.

**d)**      <u>The Proposed Class Satisfies the Criteria of Rule 23(b)</u>

Here, Plaintiff seek to certify a Class pursuant to Fed.R.Civ.P. 23(b)(1) and (b)(2). Rule 23(b)(1) allows for the certification of a class if:

> the prosecution of separate actions by or against individual members of the class would create a risk of

---

[4]      We say "indirectly" because Merck agreed to pay up to $3.5 million in attorney's fees, subject to Court approval. Leaving aside the basic principle that a corporation has a separate existence from its shareholders, Mr. Marain argues that, as Merck shareholders, Class members are being asked to pay Class Counsel whatever fees the Court might award out of their equity in the company. (Marain Objection at 5 and 6). According to Merck's 2010 Annual Report on file with the SEC, Merck's shareholder equity as of the end of 2009 was approximately $61.5 billion. Thus, the potential fees to be awarded to Class Counsel amount to approximately 0.00006% of that shareholder equity. Daily variations in the trading price of Merck's stock will have a greater effect on the value of shareholder equity than payment of Class Counsel's fee.

> (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
>
> (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

Rule 23(b)(2) allows for certification of a class if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."  The plaintiff must make two showings in order to proceed under Rule 23(b)(2).  First, the complaint must seek relief which is predominantly injunctive or declaratory.  Second, the plaintiff must demonstrate that defendants acted or refused to act on grounds generally applicable to the class. The second requirement is shown when defendant's conduct constitutes a pattern of activity. *Thomas v. SmithKline Beecham Corp.*, 201 F.R.D. 386, 397 (E.D.Pa. 2001).

Both Rule 23(b)(1) and 23(b)(2) classes are mandatory classes, *i.e.,* no opt-outs are allowed.  *See Thomas*, *id*. (Rule 23(b)(1)); *Serio v. Wachovia Securities, LLC*, 2009 WL 900167 at *5 (D.N.J. 2009)(Rule 23(b)(2)).

Here, Plaintiff has satisfied the criteria of both Rule 23(b)(1) and 23(b)(2).  The Class satisfies Rule 23(b)(1)(A) because there is a significant risk that if individual cases were brought on behalf of shareholders, Schering would have to make different disclosures or the disclosures of the same facts worded differently, or have to make no additional disclosures at all.  This could expose Schering to different standards of conduct with respect to a group to which Schering has an obligation under applicable securities laws and regulations to treat uniformly.

The Class is also certifiable under Rule 23(b)(2) because the settlement relief is exclusively injunctive or declaratory.  The settlement consisted of Schering making the

- 14 -

additional disclosures set forth in the Factual Background in the proxy statement and other SEC filings in advance of the shareholder vote on the Merger so that shareholders would have more complete information for voting whether to approve the merger.  Further, Schering acted or refused to act, however it might be characterized, on grounds generally applicable to the Class. Schering's disclosures with respect to the Merger were filed with the SEC and were to be provided to all shareholders.  With respect to the proxy statement as originally filed in the May S-4 or the final proxy statement containing the full disclosures instigated by Class Counsel and the additional 8-K filing in July 2009, Schering was acting in a uniform manner with respect to providing information to the shareholders.

<u>POINT TWO</u>

**<u>THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND<br>ADEQUATE, MERITING COURT APPROVAL</u>**

The proposed Settlement is fair, reasonable and adequate in accordance with Rule 23 because, Class Counsel believes, it obtained for the Class all of the relief which could have reasonably been obtained in litigation.  For the reasons set forth below, it should be approved.

a)      **The *Girsch* Factors**

The Third Circuit has adopted a nine-factor test to determine whether a settlement is "fair, reasonable, and adequate."  The elements of this test, known as the "*Girsch* factors" are:

> (1) the complexity and duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining a class action; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement in light of the best recovery; and (9) the range of reasonableness of the settlement in light of all the attendant risks of litigation.

*GM Trucks*, 55 F.3d at 785 (citing *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975)).

**1)      <u>Complexity, Expense, and Likely Duration of the Litigation</u>**

The first *Girsch* factor "captures the probable costs, in both time and money, of continued litigation."  *In re Cendant Corp. Litig.*, 264 F.3d 201, 233 (3d Cir. 2001).  "By measuring the costs of continuing on the adversarial path, a court can gauge the benefit of settling the claim amicably."  *GM Trucks*, 55 F.3d at 812.

This factor undoubtedly weighs in favor of settlement.  In *Warfarin Sodium*, the parties had already litigated the case for three years.  391 F.3d at 537.  Nevertheless, the court concluded that the first *Girsch* factor was satisfied:

> We agree with the District Court's conclusion that this factor favors settlement because continuing litigation through trial would have required additional discovery, extensive pretrial motions addressing complex factual and legal questions, and ultimately a complicated, lengthy trial.  Moreover, it was inevitable

that post-trial motions and appeals would not only further prolong the litigation but also reduce the value of any recovery to the class. In a class action of this magnitude, which seeks to provide recovery for Coumadin consumers and TPPs nationwide, the time and expense leading up to trial would have been significant.

*Id.* at 536.

In this litigation, the path from this stage of the litigation to a final judgment would likely be much longer and significantly more expensive. This case involved a complex, $41 billion dollar reverse merger that resulted in the creation of the second largest pharmaceutical company in the world. Litigation of the breach of fiduciary duty claims to conclusion would have involved expensive economic evaluations by investment bankers and other experts retained by both sides, considerable additional fact and expert discovery, and a complex, lengthy trial.

### 2)      The Reaction of the Class to the Settlement

The second *Girsh* factor "attempts to gauge whether members of the class support the settlement." *Prudential,* 148 F.3d at 318. In order to properly evaluate it, "the number and vociferousness of the objectors" must be examined. *GM Trucks*, 55 F.3d at 812. Generally, "silence constitutes tacit consent to the agreement." *Id.* (quotation omitted).

There were over 450,000 Class members, but only five Class members objected. That works out to only .00001% of the Class objecting, demonstrating overwhelming support of the Settlement by Class members, even greater than the support for the merger itself.

### 3)      The Stage of Proceedings and the Amount of Discovery Completed

The third *Girsh* factor "captures the degree of case development that class counsel [had] accomplished prior to settlement. Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *Cendant*, 264 F.3d at 235; *GM Trucks*, 55 F.3d at 813.

- 17 -

This inquiry has two aspects: factual and legal.  In *Prudential*, for example, the court noted that the parties had filed and argued multiple motions, including case management motions and the defendant's motion to dismiss under Rule 12(b)(6).  *Prudential*, 148 F.3d at 319.  The factual inquiry involves "an inquiry into the type and amount of discovery the parties have undertaken."  *Id.*  The discovery considered by the court includes "informal" discovery received from the defendant, third-parties and experts.  *See, e.g., GM Trucks*, 55 F.3d at 813 (expert testimony and other evidence from parallel state court proceedings); *Prudential*, 148 F.3d at 319 (witness interviews); *Cendant*, 264 F.3d at 235 (public filings); *Warfarin Sodium*, 391 F.3d at 537 (consultation with experts).

Here, the Settlement was reached before Defendants filed an answer, but, due to the nature of the litigation and the Merger, discovery took place on an accelerated and comprehensive basis.  As is set forth in the Factual Background, Defendants produced, and Class Counsel reviewed, approximately 180,000 pages of documents, took depositions and informally obtained other information from Defendants' counsel.  Class Counsel also reviewed this information with their economic experts.  Based upon this review, Class Counsel gained an adequate appreciation of the merits of the claims asserted and determined that the best result for the shareholders was for Schering to make additional disclosures so that the shareholders would be fully informed of all material information in order to make an intelligent decision as to whether the Merger should be approved.

### 4)    Risks of Establishing Liability

"By evaluating the risks of establishing liability, the district court can examine what the potential rewards (or downside) of litigation might have been had class counsel elected to litigate the claims rather than settle them."  *GM Trucks*, 55 F.3d at 319.  "The risks surrounding a trial

on the merits are always considerable." *Weiss v. Mercedes-Benz of North America,* 899 F.Supp. 1297, 1301 (D.N.J. 1995); *see also West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970) ("No matter how confident one may be of the outcome of litigation, such confidence is often misplaced."), *aff'd*, 440 F.2d 1079 (2d Cir. 1971).

In the merger context, directors have a duty to exercise informed business judgment. *See MacAndrews & Forbes Holdings, Inc. v. Revlon, Inc.*, 501 A.2d 1239, 1247 (Del. Ch. 1985) ("Directors faced with the decision to accept or reject a merger agreement must exercise informed business judgment.").[5]  Moreover, directors are required to "'disclose fully and fairly all material information within the board's control when it seeks shareholder action.'" *Wayne Co. Employees' Retirement Sys. v. Corti*, 954 A.2d 319, 330 (Del. Ch. 2008) (quoting *Malpiede v. Townson,* 780 A.2d 1075, 1086 (Del. Ch. 2001)).

In this instant case, while Plaintiff's extensive discovery efforts revealed information that Plaintiff believes should be disclosed to shareholders in connection with the vote on the Merger, the information revealed in discovery also could have supported the conclusion that Company directors acted in good faith, did not seek to promote their own self-interests, and negotiated an arms-length transaction that was beneficial to Schering-Plough shareholders.  Thus, once Defendants agreed to provide robust, supplemental disclosures in the final proxy statement, including an express acknowledgment to shareholders that Schering-Plough's Board never considered the *Lancet* article or the timing of its publication in connection with the Merger,

---

[5]      In light of the paucity of New Jersey case law concerning shareholder claims challenging mergers, Plaintiffs cite Delaware law where there is no applicable New Jersey precedent. *Pogostin v. Leighton*, 216 N.J.Super. 363, 373 (App. Div. 1986) (for claims concerning a merger "an appropriate source of reference is the case law of Delaware"); *see also Casey v. Brennan*, 344 N.J.Super. 83, 106 (App. Div. 2001) (New Jersey courts "frequently look to Delaware for guidance or assistance" when considering corporate law issues).

Plaintiff faced a substantial risk of not being able to establish that Defendants had breached their duties to shareholders.

 **5)**   <u>**Risks of Establishing Damages**</u>

"Like the fourth factor, this inquiry attempts to measure the expected value of litigating the action rather than settling it at the current time." *Cendant*, 264 F.3d at 238. The court looks at the potential damage award if the case were taken to trial against the benefits of immediate settlement. *Prudential*, 148 F.3d at 319.

In this case, Plaintiff alleged that Defendants breached their duties of loyalty, care and disclosure in negotiating and approving the Merger with Merck. Thus, any potential damages award would depend on Plaintiff proving at trial that (a) Defendants breached their duties of care, loyalty or disclosure ***and*** (b) that any established breaches caused quantifiable economic harm to Plaintiff and the putative class of Schering-Plough shareholders. Here, Plaintiff were unlikely to recover a damages award on their claims.

First, at the time of the Merger, pursuant to New Jersey law Schering-Plough's Certificate of Incorporation provided that "[a] director of the Corporation shall not be personally liable to the Corporation or its shareholders for damages for breach of any duty owed to the Corporation or its shareholders, except for liability for any breach of duty based upon an act or omission (A) in breach of such person's duty of loyalty to the Corporation or its shareholders, (B) not in good faith or involving a knowing violation of law or (C) resulting in receipt by such person of an improper personal benefit." *See* Schering-Plough SEC Form 8-K, Exhibit 3.1, filed Sep. 18, 2007. Thus, Schering's directors were exculpated from any liability arising from breaches of the duty of care, and Plaintiff were precluded from recovering money damages on their duty of care claims.

- 20 -

Second, despite Plaintiff's discovery efforts, Plaintiff did not uncover evidence that Schering-Plough's directors elevated their own personal interests over those of Company shareholders in negotiating the Merger with Merck.  Thus, Plaintiff was unlikely to recover any monetary damages in connection with their duty of loyalty claims.  *See generally Benihana of Tokyo, Inc. v. Benihana, Inc.*, 891 A.2d 150, 191 (Del. Ch. 2005) (breach of the duty of loyalty occurs only when officers and directors "'use their position of trust and confidence to further their private interests'") (quoting *Guth v. Loft, Inc.*, 5 A.2d 503, 510 (Del. 1939).

Ultimately, the only viable claims under which Plaintiff had any potential of recovering monetary damages were the claims invoking the Company Board's duty of disclosure.  However, in fashioning relief arising from a breach of duty of disclosure, injunctive relief is the preferred remedy.  *See Loudon*, 700 A.2d at 142-43.

In this case, even assuming that Defendants breached their duties of disclosure to shareholders, Plaintiff likely could not have recovered money damages, since Defendants agreed in connection with the settlement to provide supplemental disclosures concerning the claims in Plaintiff's Consolidated Complaint and other aspects of the Merger about which Plaintiff learned through the expedited discovery process.  Thus, any potential "impairment to the economic or voting rights" of Schering stockholders were remedied by supplemental disclosures in Schering's proxy, publication of the 8-K, and publication of the Consolidated Complaint.  Given these extensive disclosures and the law regarding the recoverability of damages on fiduciary claims, Plaintiff were unlikely to recovery any money damage award.

**6)      Risks of Maintaining Class Action Status Through Trial**

Because the prospects for obtaining certification have a great impact on the range of recovery one can expect to reap from the class action, *GM Trucks*, 55 F.3d at 817, the court must

measure the likelihood of obtaining and maintaining a certified class if the action were to proceed to trial. *Girsh*, 521 F.2d at 157. Here, given the nature of Plaintiff's claims and their satisfaction of the requirements of Rule 23, Plaintiff did not consider the ability to maintain a class action to pose a significant risk.

### 7) <u>Ability to Withstand Greater Judgment</u>

The seventh *Girsh* factor considers "whether the defendants could withstand a judgment for an amount significantly greater than the [s]ettlement." *Cendant*, 264 F.3d at 240. Plaintiff cannot assert that the Defendants could not afford to pay some amount of damages. Indeed, as explained above, after conducting discovery, Plaintiff believed that there was a substantial doubt that there existed any claim for money damages, and that because Defendants agreed to provide supplemental disclosures in connection with the settlement, there was simply nothing left to demand from Defendants. This factor, therefore, should be considered neutral.

### 8/9) <u>The Range of Reasonableness of the Settlement Fund in Light of the<br>Best Possible Recovery and All the Attendant Risks of Litigation</u>

The last two *Girsh* factors are usually considered together. They ask "whether the settlement is reasonable in light of the best possible recovery and the risks the parties would face if the case went to trial." *Prudential*, 148 F.3d at 322; *see also Warfarin Sodium*, 391 F.3d at 538 (court should consider "whether the settlement represents a good value for a weak case or a poor value for a strong case"). As Judge Becker explained in *GM Trucks*, "[t]he evaluating court must . . . guard against demanding too large a settlement based on its view of the merits of the litigation; after all, settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution." 55 F.3d at 806.

In making its Rule 23(e) determination, the Court should apply "an initial presumption of fairness when . . . (1) the settlement negotiations occurred at arm's length; (2) there was

- 22 -

sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class object[s]." *Warfarin Sodium*, 391 F.3d at 595; *Cendant*, 264 F.3d at 232 n.18.

In this case, Plaintiff achieved the fullest extent of what could been achieved for Company shareholders, and provided a benefit that fully vindicated the rights of Company shareholders. Indeed, the right of a shareholder to cast a fully-informed vote is *the* sacrosanct principle of the shareholder franchise. This proposition forms the bedrock of the duty imposed on corporations and their directors to disclose to stockholders all material information when seeking a shareholder vote. Without full knowledge of all material aspects of the matter on which the shareholder is entitled to vote, a shareholder's role is meaningless.

On the other hand, a fully-informed shareholder, armed with complete knowledge of the matter on which he is evaluating (and, ultimately, voting), is entitled to make whatever decision he chooses, *i.e.*, a "yes" or "no" vote. Except in rare circumstances, it is not the role of a lone minority shareholder to prevent the entire body of a company's shareholders from casting a vote on a matter submitted by the board for shareholder consideration. Through the litigation here, Plaintiff accomplished as much as could be asked of any responsible investor, and at the same time appreciated the importance of letting Schering's shareholders ultimately consider the Merger with Merck. Nevertheless, the decision of whether to accept Merck's proposal – at whatever price – ultimately was up to the shareholders themselves. Armed with the information provided through the efforts of Plaintiff and Class Counsel, Schering's public shareholders overwhelmingly voted to approve the merger, but at least they did so on a fully informed basis.

Courts routinely recognize the benefits for shareholders when class representatives are successful in negotiating for supplemental disclosures in a proxy statement: "Where a

representative shareholder succeeds in correcting invalid disclosures in connection with a transaction between the corporation and its stockholders, our case law recognizes that for fee awarding purposes, the corporation and all of its shareholders are benefitted." *Eisenberg v. Chicago Milwaukee Corp.*, 1988 WL 112910, at *3 (Del. Ch. 1988); *see also Augenbuam v. Forman*, 2006 WL 1716916, at *2 (Del. Ch. 2006) ("supplemental disclosures included useful information . . . that permitted stockholders to view the final price term and related information from a materially different perspective")

In this case, Plaintiff's efforts resulted in Schering-Plough amending its joint proxy statement to include significant, material disclosures.    Among other things, Schering's supplemental disclosures informed shareholders that the Schering Board did not to consider an allegedly important event concerning its potential blockbuster drug, TRA, when determining the timing of the Merger announcement.    These disclosures allowed shareholders to determine for themselves whether the Board's failure rendered the Merger unfair.    Schering shareholders were also apprised of all other material aspects of the Merger due to Plaintiff's efforts, including: (a) fees paid to Schering's financial advisers, including the amount contingent upon consummation of the Merger; (b) the Board's reasons for approaching only one potential Merger partner besides Merck; (c) details concerning the Board's negotiation of certain aspects of the merger, including "deal-protection" provisions in the Merger Agreement; and (d) information relating to Schering's arbitration efforts to retain marketing rights to its blockbuster drug, Remicade.   *Id*.   In addition, Plaintiff's efforts resulted in Schering taking the extraordinary (and perhaps unprecedented) step of publishing the Consolidated Complaint, which allowed shareholders to independently evaluate additional information concerning the Merger.

- 24 -

As one court has described them, disclosures "give[] stockholders the choice to think for themselves on full information, thereby vindicating their rights as stockholders to make important voting and remedial decisions based on their own economic self-interest." *In re Netsmart Tech., Inc. Shareholder Litig.*, 924 A.2d 171, 207 (Del. Ch. 2007). Indeed, Class Counsel not only vindicated Schering shareholders' rights, but empowered them to decide whether the transaction with Merck was in their best interests.

However, Plaintiff also recognized the principle that "when disinterested stockholders make a mature decision about their economic self-interest . . . second-guessing is almost completely circumscribed." *See generally In re Lear Corp. Shareholder Litig.*, 926 A.2d 94, 114-15 (Del. Ch. 2007). Consistent with Plaintiff's obligations, after aggressively negotiating for the fulsome disclosures that were ultimately agreed to by Schering in connection with the settlement, Plaintiff allowed Schering shareholders to proceed with a vote on the Merger.

**b)    Transmission of the Notice of Settlement to the Class**
**      Satisfied both the Court's Preliminary Order and Applicable Law**

Rule 23(e)(1) instructs courts to "direct notice in a reasonable manner to all class members who would be bound by the proposal." Such notice to class members "need only be reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections." *Prudential*, 962 F. Supp. at 527-28 (citations omitted).

Here, consistent with the Federal Rules of Civil Procedures and this Court's Order Preliminarily Approving Settlement (the "Preliminary Approval Order), Defendants provided the Class with notice that described the terms of the Settlement, explained the claims and defenses in the lawsuit, provided instructions for Class members to object to the Settlement, provided

- 25 -

detailed information about the final Settlement approval hearing, and provided contact information for Class Counsel, among other things.

Accordingly, the form and manner of Notice to Class members satisfy both the Preliminary Approval Order and Rule 23.

## POINT THREE

### THE OBJECTIONS TO THE
### SETTLEMENT SHOULD BE OVERRULED

After providing notice of the Settlement to approximately 450,000 Class members, a mere five Class members, or roughly .00001% of the total Class, filed objections addressing the terms of the settlement. This overwhelming support by the vast majority of the Class is an exceptionally strong indication of the fairness and reasonableness of the Settlement. *See, e.g., In re Telik, Inc. Sec. Litig.*, 576 F.Supp.2d 570, 577-78 (S.D.N.Y. 2008) (approving settlement where only three objections filed); *In re WorldCom, Inc. Sec. Litig.*, 388 F.Supp.2d 319, 337-38 (S.D.N.Y. 2005) ("only seven . . . formal objections . . . evidences the fairness of th[e] settlements") (citation omitted); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004) (finding that "extremely lower numbers of objectors . . . strongly support[s] settlement approval" where six class members filed timely objections, and six filed untimely objections) (citation omitted). Furthermore, the objections that were filed suffer from the same, fatal deficiencies.

Specifically, the objectors' common argument is that the Settlement did not include monetary or economic relief for the Class. While Class Counsel appreciates the objectors' concerns, this argument blindly ignores the extraordinary benefits Class Counsel achieved, including causing Defendants to provide fulsome, supplemental disclosures in both Schering's Proxy and in a separately filed SEC Form 8-K. As explained in more detail above, after aggressively litigating this action and determining that Plaintiff were unlikely to recover money damages, Class Counsel successfully negotiated for significant equitable relief in the form of supplemental disclosures. These disclosures apprised shareholders of all material aspects of the Merger, and included (a) a statement by Schering-Plough that it did not consider an allegedly

important Company announcement, including the timing of the announcement, relative to the announcement of the Merger; (b) a table setting forth the movement of Schering's and Merck's stock prices prior and subsequent to the release of this important Company news; and (c) a copy of the Plaintiff's Consolidated Complaint that allowed shareholders to evaluate all of Plaintiff's claims.

None of the objectors even pretend to acknowledge the disclosures Class Counsel achieved, or, even more critically, to identify how these disclosures were purportedly insufficient or unimportant, or failed to provide a benefit to the Class. Indeed, it remains unclear if any of the objectors even read either the Proxy Statement or Schering's supplemental 8-K before submitting their objections to this Court.

Mr. Marain's motion for Rule 11 sanctions is similarly infirm. First, Mr. Marain's motion is procedurally deficient because he failed to file his motion separately from his Settlement opposition papers, and failed to serve Class Counsel with his motion twenty-one days prior to filing it with this Court. *See* Fed.R.Civ.P. 11(c)(2) ("A motion for sanctions must be made separately from any other motion."); *Fat T, Inc. v. Aloha Tower Assoc. Piers 7, 8, and 9*, 172 F.R.D. 411, 415 (D. Hawaii 1996) (denying plaintiff's Rule 11 motion where plaintiff failed to file motion separately from its opposition to defendants' opposition to motion to dismiss); *In re Schaefer Salt Recovery, Inc.*, 542 F.3d 90, 99 (3d Cir. 2008) ("If the twenty-one day period is not provided [to the party against whom sanctions are sought], the motion must be denied.").[6]

---

[6]     In addition, Mr. Marain lacks standing to move for sanctions because he is not a party to this litigation. *See NY News, Inc. v. Kheel*, 972 F.2d 482, 488 (2d Cir. 1992) ("[A]s a general rule only parties to an action . . . have standing to move for sanctions under Rule 11.") Alternatively, to the extent Mr. Marain, as a member of the Class, is a party to the litigation, he is represented in that capacity by Class Counsel, and Rule 11 does *not* allow for the imposition of sanctions against a party's own attorneys. *See, e.g., Mark Indus., Ltd. v. Sea Captain's Choice, Inc.*, 50 F.3d 730, 732 (9th Cir. 1995) (agreeing with party's contention that "Rule 11 does not authorize sanctions in favor of a party against its own attorney").

Second, Mr. Marain's arguments in support of an imposition of sanctions are substantively without merit.  Mr. Marain's main argument – that Class Counsel "recovered nothing" – completely overlooks Class Counsel's efforts, as well as the benefits provided to Schering-Plough Shareholders.  Furthermore, Mr. Marain's insistence that Class Counsel did not achieve "equitable relief" strongly suggests that Mr. Marain did not read either the Proxy or the 8-K before filing his motion.  Indeed, Mr. Marain does not (and cannot) explain why the litany of disclosures attained by Class Counsel are purportedly insufficient.

But for Class Counsel's efforts, Company shareholders would have been left to render an uninformed vote on a fundamental change of control of Schering.  The single largest decision Schering shareholders would ever be faced with as owners of Schering-Plough – whether to approve the transaction with Merck – would have been marred by Schering's failure to apprise shareholders of the information necessary to make a fully informed vote on the Merger.  Thus, far from "visit[ing] injustice" on Class members, as Mr. Marain asserts, Class Counsel, in successfully negotiating for supplemental disclosures, provided a tremendous service consistent with their obligations to the Class.

Accordingly, the Court should deny the objections and Mr. Marain's motion for Rule 11 sanctions.

## POINT FOUR

### CLASS COUNSEL ARE
### ENTITLED TO THE FEES PROVIDED
### IN THE SETTLEMENT AGREEMENT

For prosecuting this action on a fully contingent basis and obtaining substantial benefits for the Class, Class Counsel seek an award of attorneys' fees and expenses in the amount of $3.5 million.  As discussed below, the fee application is fair and reasonable in light of the very substantial benefits Class Counsel achieved for the Class through the Settlement.

a)      **The Litigation Conferred Substantial Benefits On The Class**

Under the "common benefit doctrine, an award of attorney's fees is appropriate where the plaintiff's successful litigation confers a substantial benefit on members of an ascertainable class."  *In re Diet Drugs*, 582 F.3d 524, 546 (3d Cir. 2009) (citation and internal quotations omitted).  Moreover, under this doctrine, "[a]ttorney's fees are awardable even though the benefit conferred is purely ***nonpecuniary*** in nature."  *Merola v. Atlantic Richfield Co.*, 515 F.2d 165, 169-70 (3d Cir. 1975) (emphasis added) (citing *Mills v. Elec. Auto-Lite*, 396 U.S. 375 (1970)).  In common benefit cases, "a heightened level of corporate disclosure, if attributable to the filing of a meritorious suit, may justify an award of counsel fees." *Tandycrafts, Inc. v. Initio Partners*, 562 A.2d 1162, 1165 (Del. 1989); *Eisenberg*, 1988 WL 112910, at *3 ("Where a representative shareholder succeeds in correcting invalid disclosures in connection with a transaction between the corporation and its stockholders, our case law recognizes that for fee awarding purposes, the corporation and all of its shareholders are benefitted.").

In this case, the Settlement, while "nonpecuniary," provided the fullest extent of what could have been attained for the Class.  As described in detail above, Plaintiff's efforts  resulted in securing significant, material disclosures for Class members concerning the Merger.  Without

- 30 -

the benefits of these disclosures, Plaintiff believes that Class Members would have been forced to render an uninformed vote.

While every case is unique and must be judged on its own merits, the requested $3.5 million fee is well within the range of similar merger or "deal" cases where the settlement consisted mainly, if not solely, of supplemental disclosures in company filings.  Moreover, courts have granted similar or larger attorneys' fees in case involving far smaller transactions than the $51 billion Schering-Plough/Merck Merger.  For instance, in *In re The DirecTV Group, Inc. S'holder Litig.*, C.A. No. 4581 (Del Ch. Nov. 30, 2009), the Delaware Court of Chancery recently awarded $7 million in attorneys' fees in a mainly-disclosure settlement concerning the $14.6 billion merger of DirecTV Group Inc. and Liberty Media Entertainment Incorporated. Similarly, in *In re New York Stock Exchange/Archipelago Merger Litigation*, No. 601646/05 (N.Y. Sup. Ct. Feb. 21, 2006), the Supreme Court of New York awarded plaintiffs' counsel $8.5 million in a disclosure-only settlement concerning the $9 billion merger of the New York Stock Exchange and Archipelago Holdings.  Numerous other precedents support the attorneys' fee request in this case.  *See, e.g., Minneapolis Firefighters Relief Assoc. v. Ceridian Corp.*, C.A. No. 29660 (Del. Ch. Mar. 24, 2009) ($7 million fee awarded in mainly-disclosure settlement concerning $5.3 billion merger); *Villari v. Elec. Data Sys. Corp.*, C.A. No. 3786 (Del. Ch. Dec. 30, 2008).  ($3.25 million fee awarded in disclosure-only settlement concerning $13 billion merger);  *In Re: Mony Group Inc. S'Holders Litig.*, C.A. No. 20554 (Del. Ch. Oct. 2, 2004) ($2.7 million fee awarded in disclosure-only settlement concerning $1.5 billion merger).

**b)      The Requested Fee Was Negotiated Through Mediation**

The presence of an arms' length negotiation among the parties weighs strongly in favor of approving attorneys' fees.  *Weber v. Gov't Employees Ins. Co.*, 262 F.R.D. 431, 451 (D.N.J.

2009).  Additionally, attorneys' fees that are negotiated *after* settlement terms were agreed upon is entitled to a strong presumption of reasonableness.  *Weber*, 262 F.R.D. at 451; *accord In re Prodigy Commc'ns S'Holders Litig.*, 2002 WL 1767543 at *6 (Del. Ch. 2002) ("Where, as here, the fee is negotiated after the parties have reached an agreement in principle on settlement terms and is paid in addition to the benefit to be realized by the class, this court will also give weight to the agreement reached by the parties in relation to fees.").

Here, not only was the requested fee negotiated at arms' length between Class Counsel and Defense Counsel, but such negotiations included an intensive, two-day mediation effort led by the Honorable Judge Nicholas H. Politan, a highly-experienced mediator who served on the United States District Court for the District of New Jersey for nearly fifteen years until his retirement in 2002.  The fact that the parties' protracted negotiations were ultimately facilitated by an Officer of the Court should give this Court further comfort in the reasonableness of the requested attorneys' fees.  Moreover, the parties' negotiations occurred *after* agreeing to the terms of the Settlement and, indeed, after Defendants had *performed* a large part of their Settlement obligations by providing supplemental disclosures to Company shareholders.

c)      **The Requested Fee Is Reasonable Considering**
        **The Efforts of Counsel And The Time Spent On the Case**

Where, as here, there is no "common fund" out which attorneys' fees can be awarded, the lodestar method is the appropriate method for calculating fees.  *Weber*, 262 F.R.D at 449 (stating that the lodestar method is appropriate where "the settlement agreement . . . does not contemplate a common fund that would be depleted depending on the size of the fee award." (citation omitted);  *Joy Mfg. Corp. v. The Pullman-Peabody Co.*, 742 F. Supp. 911, 913 (W.D. Pa. 1990) (stating that the lodestar method "has been applied in the so-called 'common benefit' cases where a nonmonetary benefit has been conferred through litigation but no monetary fund exists

from which the cost of obtaining the benefit can be spread among the beneficiaries."). Moreover, the lodestar method is appropriate where, as here, it is difficult to quantify the  dollar value of the benefit to the class.  *Weber*, 262 F.R.D. at 449-50 (employing lodestar method where "the exact value of the settlement will be difficult to quantify.")

In setting the lodestar amount, the court multiplies the number of hours reasonably worked on a client's case by a reasonable billing rate for such services in the given geographical area provided by a lawyer of comparable experience.  *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 280 (3d Cir. 2009).  The lodestar method is "strongly presumed to yield a reasonable fee."  *Weber*, 262 F.R.D. at 451 (citation omitted).

In this case, after deducting total expenses of $131,777.16, the fee requested is approximately 2.18 times Class Counsel's overall lodestar, representing an average hourly rate of approximately $1,294 per hour.[7]  These amounts are comparable to, or below, those awarded in other cases in this Circuit, and are reasonable, especially given the substantial and multiple benefits provided to the Class.  *Compare Franklin Balance Sheet Inv. Fund v. Crowley*, 2007 WL 2495018, at *14 (Del. Ch. 2007) ($4.2 million fee represented an hourly rate of $4,023 per hour); *In re NCS Healthcare S'holders Litig.*, 2003 WL 21384633, at *3 (Del. Ch. 2003) ($10 million fee represented an hourly rate of approximately $3,030 per hour); *Dragon v. Perelman*, C.A. No. 15101 (Del. Ch. Aug. 29, 1997) Tr. at 48, 51 ($3,000,000 fee represented an hourly rate of approximately $3,500); *In re Digex, Inc. S'holder Litig.*, C.A. No. 18336 (Del. Ch. Apr. 6,

---

[7]    The lodestar and expense details for Co-Lead Counsel and Liaison Counsel are provided in Exhibits A through C to the accompanying Declaration of James E. Cecchi.  Also attached to Mr. Cecchi's Declaration as Exhibits D and E, respectively, are the lodestar and expenses for Pomerantz, Haudek, Grossman & Gross and Brower Piven.  Pomerantz was co-counsel in another of the federal court actions, while Brower Piven was co-counsel in one of the state court actions.   Class Counsel intends to share a portion of the awarded fees with Brower Piven in recognition of their contribution to the end result obtained.  When their time is included, the

- 33 -

2001) Tr. at 141-47 (lodestar of $1.4 million awarded fee of $12.3 million, representing lodestar multiplier of 9); *In re Lin Broadcasting Corp. S'holders Litig.*, C.A. No. 14039 (Del. Ch. Sept. 15, 1995) ($9 million fee represented an hourly rate of more than $3,800); *Louisiana Municipal Police Employees' Ret. Sys. v. Crawford*, C.A. No. 2635 (Del. Ch. June 8, 2007) (order approving fees of $20 million representing a lodestar multiplier of 6.5); *Globis Capital Partners v. Safenet*, No. 2772-VCS (Del. Ch. Dec. 20, 2007) (awarding fees of $1,500 per hour, for a total award of $1.2 million, in a disclosure-only settlement).

In sum, since (a) Class Counsel provided substantial benefits to the class; (b) agreed to the requested fee at arms' length, pursuant to mediation, and after the negotiation of the Settlement; and (c) the requested fees are supported by Class Counsel's lodestar, Plaintiff's request for a fee award of $3.5 million is reasonable and should be approved by this Court.

---

lodestar and expenses devoted 2,772.25 hours to prosecuting this case.  At their normal hourly billing rates, the time expended by counsel results in a lodestar of $1,606,466.25.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court approve the

Settlement, certify the Class, and award the requested attorneys' fees.

CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO
Co-Lead Counsel


By: ___/s/ James E. Cecchi_____
        JAMES E. CECCHI


Dated:  March 19, 2010

Jay W. Eisenhofer                          Christopher A. Seeger
Keith Fleischman                           Stephen A. Weiss
GRANT & EISENHOFER P.A.                    Diogenes P. Kekatos
485 Lexington Avenue                       SEEGER WEISS LLP
New York, New York  10017                  One William Street
(646) 722-8500                             New York, New York  10004
                                           (212) 584-0700