# Exhibit D

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **IN RE SCHERING-PLOUGH/MERCK MERGER LITIGATION** | **Civil Action No. 09-1099 (DMC)** |

## DECLARATION OF MARC I. GROSS
## OF POMERANTZ HAUDEK GROSSMAN & GROSS, LLP
## IN SUPPORT OF JOINT APPLICATION FOR
## ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

Marc I. Gross hereby declares and states as follows:

1.        I am a member of the firm of Pomerantz Haudek Grossman & Gross, LLP.  I submit this Declaration in support of the Joint Application of Plaintiffs' Counsel for an award of attorneys' fees in connection with services rendered in the above action and the reimbursement of expenses incurred that are related to the investigation, prosecution and settlement of claims in the course of this litigation through December 31, 2009.

2.        My firm served as one of the counsel for the Class in this action, and represented plaintiff David Husarsky.  Our role included researching and filing a complaint; review and analysis of documents at the direction of Lead Counsel; and assistance on the settlement negotiation process.

3.        The schedule annexed hereto as Exhibit A is a summary indicating the number of hours spent by the lawyers, law clerks, and paralegals of my firm on this litigation, their current hourly rates, and the resulting lodestar calculation.   The schedule was prepared from contemporaneous daily time records regularly prepared and maintained by my firm.  Time spent in preparing this affidavit is not included in the chart.

4.     As set forth in Exhibit A, the number of hours spent on this litigation by my firm since the inception of the case is 142 hours.  The lodestar amount for lawyer, law clerk, and paralegal time based on the firm's current hourly rates is $88,166.50.

5.     A copy of my firm's biography is annexed hereto as Exhibit B.

6.     The Pomerantz Firm has expended a total of $4,159.98 in unreimbursed expenses in connection with the prosecution of this litigation, broken down as follows:

| Category | Amount |
|---|---|
| Computer Research | $2,951.99 |
| Document Retrieval | 944.00 |
| Telephone & Facsimile | 3.32 |
| Photocopying | 260.67 |
| **TOTAL EXPENSES**: | **$4,159.98** |

7.     The expense information shown above summarizes information contained in the financial records of the Firm, kept in the ordinary course of business.  My firm will not seek reimbursement for any of the above expenses from any source other than the Settlement Fund.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 3rd day of February, 2010, at New York, New York

Marc I. Gross

# Exhibit A

Schering  Plough                              01/25/2010

## Pomerantz Haudek Grossman & Gross LLP
### HOURS AND LODESTAR BY CURRENT RATE
Inception –December 31, 2009

| ATTORNEY | STATUS | CURRENT RATE | HOURS | CURRENT LODESTA |
|----------|--------|--------------|-------|-----------------|
| Axelrod, Robert J. | Partner | $625.00 | 0.50 | $312.5( |
| Gross, Marc I. | Partner | $775.00 | 16.60 | $12,865.0( |
| Grossman, Stanley M. | Partner | $830.00 | 1.50 | $1,245.0( |
| Prussin, H. Adam | Partner | $740.00 | 66.80 | $49,432.0( |
| Rushd, Shaheen | Partner | $740.00 | 4.00 | $2,960.0( |
| Hodgson, R. James | Associate | $440.00 | 14.30 | $6,292.0( |
| Qian, Fei-Lu | Associate | $400.00 | 25.30 | $10,120.0( |
| Silverman, Joshua B | Of Counsel | $550.00 | 6.50 | $3,575.0( |
| | ATTORNEYS' TOTAL | | 135.50 | $86,801.5( |

| PARALEGALS AND LEGAL ASSISTANTS STATUS | | CURRENT RATE | HOURS | CURRENT LODESTA |
|----------------------------------------|--|--------------|-------|-----------------|
| Moskowitz, Carolyn S. | Paralegal | $210.00 | 6.50 | $1,365.0( |
| PARALEGALS' AND LEGAL ASSISTANTS' TOTAL | | | 6.50 | $1,365.0( |

|  | FIRM'S TOTAL | HOURS | LODESTAR |
|--|--------------|-------|----------|
|  |  | 142.00 | $88,166.50 |

# Exhibit B

# POMERANTZ
### HAUDEK GROSSMAN & GROSS LLP

# the Pomerantz Firm

Pomerantz Haudek Grossman & Gross LLP ("Pomerantz" or "Firm") is one of the nation's foremost specialists in corporate, securities, antitrust and ERISA class litigation. The Firm was founded in 1936 by the late Abraham L. Pomerantz, one of the "pioneers who developed the class action/derivative action field."[1]  Mr. Pomerantz rose to national prominence as a "champion of the small investor" and a "battler against corporate skullduggery."[2]  Today, senior partners Stanley M. Grossman and Marc I. Gross maintain the commitments to excellence and integrity passed down by Mr. Pomerantz. Mr. Grossman has been recognized as one of the top New York City based securities litigators, and has served on the Ethics Committee of the New York City Bar Association. Mr. Gross has over thirty years experience litigating securities fraud and derivative actions and is a Vice President of the Institute of Law and Economic Policy.

For more than 70 years, the Firm has consistently shaped the law, winning landmark decisions that have expanded and protected investor rights, and initiated historic corporate governance reforms. The Firm's primary focus is on securities, antitrust and insurance-related litigation.

## Courts Have Consistently Acknowledged Firm's
## Ability to Successfully Litigate on Behalf of Investors

Throughout its history, courts time and again have acknowledged the Firm's ability to vigorously pursue and successfully litigate actions on behalf of investors. In approving the settlement in *In re Wiring Devices Antitrust Litigation*, MDL Docket No. 331 (E.D.N.Y. Sept. 9, 1980), Chief Judge Jack B. Weinstein stated:

> Counsel for the plaintiffs I think did an excellent job . . . . They are outstanding and skillful.  The litigation was and is extremely complex. They assumed a great deal of responsibility.  They recovered a very large amount given the possibility of no recovery here which was in my opinion substantial.

Recently, in approving a $146.25 million settlement in *In re Charter Communications Sec. Litig.*, 02 Cv1186 (E.D. Mo. 2005), in which Pomerantz served as sole Lead Counsel, Judge Charles A. Shaw praised the Firm's efforts:

---

[1] New York Law Journal (August 1, 1983).

[2] Robert J. Cole, *Class Action Dean*, The National Law Journal, Vol. 1 No. 2 at 1 (Sept. 25, 1978).

This Court believes Lead Plaintiff achieved an excellent result in a complex action, where the risk of obtaining a significantly smaller recovery, if any, was substantial." In awarding fees to Pomerantz, the Court cited "the vigor with which Lead Counsel . . . investigated claims, briefed the motions to dismiss, and negotiated the settlement . . ..

Also, in certifying a class in a securities fraud action against analysts in *DeMarco v. Robertson Stephens*, 2005 U.S. Dist. LEXIS (S.D.N.Y.), Judge Gerard D. Lynch stated that Pomerantz had "ably and zealously represented the interests of the class."

Numerous courts have made similar comments. Appointing Pomerantz Lead Counsel in *American Italian Pasta Co. Sec. Litig.*, No 05-CV-0725-W-ODS (W.D. Mo.), a class action that involved a massive fraud and restatements spanning several years, the District Court observed that the Firm **"has significant experience (and has been extremely effective) litigating securities class actions, employs highly qualified attorneys, and possesses ample resources to effectively manage the class litigation and protect the class's interests."** In *Snyder v. Nationwide* Insurance Co., Index No. 97/0633 (N.Y. Supreme Court, Onondaga County), a case where Pomerantz served as Co-Lead Counsel, Judge Tormey stated, **"It was a pleasure to work with you. This is a good result. You've got some great attorneys working on it."** See *also*, *Steinberg v. Nationwide Mutual Insurance Co.*, 99 CV 7725 (E.D.N.Y.) (Judge Spatt, granting class certification and appointing the Firm as class counsel, observed: **"The Pomerantz firm has a strong reputation as class counsel and has demonstrated its competence to serve as class counsel in this motion for class certification."** 2004 U.S. Dist. LEXIS 17669 at *24); *Mercury Savings and Loan*, CV 90-87 LHM (C.D. Cal.) (Judge McLaughlin commended the Firm for the **"absolutely extraordinary job in this litigation."**); *Boardwalk Marketplace Securities Litigation*, MDL No. 712 (D. Conn.) (Judge Eginton described the Firm's services as **"exemplary,"** praised it for its **"usual fine job of lawyering . . .[in] an extremely complex matter,"** and concluded that the case was **"very well-handled and managed."** Tr. at 6, 5/20/92; Tr. at 10, 10/10/92); *Nodar v. Weksel*, 84 Civ. 3870 (S.D.N.Y.) (Judge Broderick acknowledged **"that the services rendered [by Pomerantz] were excellent services from the point of view of the class represented, [and] the result was an excellent result . ."** Tr. at 21-22, 12/27/90); *Klein v. A.G. Becker Paribas, Inc.*, 83 Civ. 6456 (S.D.N.Y.) (Judge Goettel complimented the Firm for providing **"excellent . . . absolutely top-drawer representation for the class, particularly in light of the vigorous defense offered by the defense firm."** (Tr. at 22, 3/6/87)); *Digital Sec. Litig.*, 83-3255Y (D. Mass.) (Judge Young lauded the Firm for its "[v]ery fine lawyering" (Tr. at 13, 9/18/86); *Shelter Realty Corp. v. Allied Maintenance Corp.*, 75 F.R.D. 34, 40 (S.D.N.Y.) (Judge Frankel, referring to Pomerantz, said: **"Their experience in handling class actions of this nature is known to the court and certainly puts to rest any doubt that the absent class members will receive the quality of representation** to which they are entitled."); *Rauch v. Bilzerian*, 88 Civ. 15624 (Sup. Ct. N.J.) (After trial, the court referred to Pomerantz partners as **"exceptionally competent counsel,"** and as having provided **"top**

**drawer, topflight [representation], certainly as good as I've seen in my stay on this court.")**

Legacy of Setting
Important Precedents

The Firm has won many landmark decisions that have enhanced shareholders' rights and improved corporate governance.

- *StoneRidge Investment Partners v. Scientific-Atlanta*, No. 128 S. Ct. 761 (2008) (In one of the most important securities cases in recent memory, the Firm obtained a ruling from the United States Supreme Court that provides a firm basis for holding third parties, such as bankers, accountants, and advisors, who do not affirmatively make false public statements, nevertheless liable for securities fraud in certain circumstances pursuant to Section 10(b) of the Securities Exchange Act of 1934);

- *EBC I, Inc. v. Goldman Sachs & Co.*, 5 N.Y. 3d (2005) (New York State's highest court found for the first time that a lead managing underwriter can owe fiduciary duties to an issuer in connection with the issuer's IPO even where the underwriting contract does not establish any fiduciary relationship);

- *Ross v. Bernhard*, 396 U.S. 531 (1970) (establishing the right to trial by jury of derivative actions);

- *Kronfeld v. TWA*, 832 F.2d 726 (2d Cir. 1987) (holding, *before Basic, Inc. v. Levinson*, 485 U.S. 224 (1988), that a company may have the obligation to disclose to shareholders its Board's consideration of important corporate transactions, such as the possibility of a spin-off, even before any final decision has been made);

- *In re Summit Medical Systems Secs. Litig.*, 294 F.3d 969 (8th Cir. 2002) (holding that standing existed for aftermarket purchasers who could trace their purchase of shares to a false registration);

- *Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*, 740 F.2d 190 (2d Cir. 1984) (establishing limits on advisory fees charged by investment advisors under the Investment Company Act);

- *Fogel v. Chestnutt*, 533 F.2d 731 (2d Cir. 1975) (private right of action under Investment Advisory Act and duty of fund managers to make full disclosures to outside directors in all areas where there was a possibility of any conflict of interest); *Moses v. Burgin*, 445 F.2d 369 (1st Cir. 1971) (similar);

- *In re Comverse Technology Inc. Sec. Litig.*, 2007 U.S. Dist. LEXIS 14878 (E.D.N.Y. 2007) (clarifying the standards for calculating the "largest financial interest" in the

selection of lead plaintiffs in a manner consistent with the Supreme Court's ruling on loss causation in *Dura Pharmaceuticals v. Broudo*, 544 U.S. 336 (2005)).

- *See also, Pearlman v. Feldmann*, 219 F.2d 173 (2d Cir. 1955); *DeMarco v. Robertson Stephens*, 2005 U.S. Dist. LEXIS 2005 (S.D.N.Y. 2005); *Salomon Analyst AT&T Litig.*, 350 F. Supp. 2d 455 (S.D.N.Y. 2004) (GEL); *DeMarco v. Robertson Stephens*, 318 F. Supp. 2d 110 (S.D.N.Y. 2004); *In re Green Tree Fin. Corp. Options Litig.*, No. 97-2679, 2002 U.S. Dist. LEXIS 13986 (D. Minn. July 29, 2002); *Drolet v. Healthsource, Inc.*, 968 F. Supp. 757 (D.N.H. 1997); *In re Texas International Company Sec. Litig.*, [1988-89 Decisions] Fed. Sec. L. Rep. (CCH) ¶ 94,125 (W.D. Okla. 1988); *Fisher v. Kletz*, 266 F. Supp. 180 (S.D.N.Y. 1967).

## Significant Recoveries
## Achieved for the Class

Among the class and shareholder derivative actions in which Pomerantz was Lead or Co-Lead Counsel are:

- *In re Charter Communications, Inc. Sec. Litig.*, No. 05-CV-1186 (E.D. Mo. 2005) ($146.25 million recovery);

- *In re Methionine Antitrust Litig.*, Master File No. C-99-3491-CRB, MDL No. 1311 (N.D. Cal. 2002) ($107 million recovery);

- *In re First Executive Corporation Sec. Litig.*, CV-89-7135 DT (Kx) (C.D. Cal. 1994) ($102 million recovery);

- *In re Salomon Brothers Treasury Litig.*, 91 Civ. 5471 (RPP) (S.D.N.Y. 1994) ($100 million recovery);

- *Snyder v. Nationwide Insurance Co.*, Index No. 97/0633 (Supreme Court, N.Y., Onondaga County 1998) ($100 million recovery);

- *In re Telerate, Inc. Shareholders Litig.*, Civ. 1115 (Del. Ch. 1989) ($95 million benefit).

- *In re Sorbates Direct Purchaser Antitrust Litig.*, C98-4886 Cal (N.D. Cal. 2000) (over $82 million recovery);

- *In re Elan Corp. Sec. Litig.*, No. 02-CV-0865(RMB) (S.D.N.Y. 2005) ($75 million recovery);

- *In re Salomon Analysts AT&T Litig.*, No. 02-CV-865 (S.D.N.Y.) ($74.75 million recovery);

- *In re Boardwalk Marketplace Sec. Litig.*, M.D.L. Docket No. 712 (D. Conn. 1994) (over $66 million benefit);

- *In re National Health Laboratories, Inc. Sec. Litig.*, CV-92-1949-H (CM) (S.D. Cal. 1995) ($64 million recovery);

- *In re Safety-Kleen Corp. Stockholders Litig.*, C.A. No. 3:00-CV-736-17 (D.S.C. 2004) ($54.5 million recovery);

- *In re Livent, Inc. Noteholders Sec. Litig.* Case No. 98-CV-7161 (S.D.N.Y. 2003) ($17.25 million aggregate settlements; $36 million additional judgment (with interest);

- *In re Transkaryotic Sec. Litig.*, No. 03-10165 (D. Mass 2008) (member of Executive Committee) ($50 million recovery);

- *Mardean Duckworth v. Country Life Insurance Co.,* No. 98 CH 01046 (Ill. Cir. Ct., Cook Cty.) ($45 million recovery);

- *In re Summit Metals, Inc. v. Gray*, No., 98-2870 (D. Del. 2004) ($43 million judgment and required turnover of the stock of two corporations);

- *In re Ocean Drilling & Exploration Company Shareholders Litig.*, Civ. No. 11898 (Del. Ch. 1991) ($38 million cash benefit);

- *In re National Student Marketing Sec. Litig.*, MDL Docket No. 105 (D.D.C. 1983) ($35 million recovery).

- *Hurley v. FDIC*, Civil Action No. 88-1940-T (D. Mass. 1992) ($29 million judgment after trial against two former officers of First Service Bank for Savings);

- *In re American Italian Pasta Company Sec. Litig.*, No. 05-CV-0725 (W.D. Mo. 2008) ($28.5 million settlement)

- *In re Data Point Sec. Litig.*, SA-82-CA-338 (W.D. Tex. 1987) ($28.4 million recovery);

- *Wallace v. Fox* Docket No. 3:96-CV-00772 (PCD) (D. Conn. 1997) (Northeast Utilities Shareholder Derivative Action) ($25 million recovery);

- *In re AM International, Inc. Sec. Litig.*, M-21-31, MDL Docket No. 494 (S.D.N.Y. 1987) ($23 million recovery);

- *Frank v. Paul* (CenTrust Savings Bank Sec. Litig.), 90-0084-CIV (S.D. Fla. 1996) ($20 million recovery); and

- *In re Woolworth Corporation Sec. Class Action Litig.*, 94 Civ. 2217 (RO) (S.D.N.Y. 1997) (recovery of $20 million);

Pomerantz is also at the forefront of innovative class actions against health insurance companies to protect both patients and doctors from abuses of managed care. It represents both individuals and large medical associations, including the AMA. Among its precedent setting cases are *Wachtel v. Health Net, Inc.*, (D.N.J.), where, as Co-Lead Counsel, Pomerantz reached a $200 million cash settlement, and gained extensive changes in Health Net's business practices valued at approximately $50 million. In these cases, the Firm charged that the insurer was improperly reducing health care benefits for members who received treatments from out-of-network providers. In approving the settlement, Judge Faith S. Hochberg observed:

> There has been an enormous amount of highly professional time put into what's a very important issue here, and that is to make sure that when people are covered by insurance coverage, that they get what they believed that they are entitled to. This settlement will go a very long way and reverberate far beyond this courtroom in that. And I believe it has already done so.

Biographies of the Firm's attorneys follow:

## STANLEY M. GROSSMAN

Stanley M. Grossman, a senior partner at Pomerantz, is recognized as a leader in the plaintiffs' securities bar. He was featured in the New York Law Journal (August 1, 1983) article: "*Top Litigators in Securities Field – A Who's Who of City's Leading Courtroom Combatants.*" Mr. Grossman has litigated securities (individual and class), derivative and antitrust actions with the Firm for 39 years on behalf of both institutional and individual clients.

Mr. Grossman has primarily represented plaintiffs in securities and antitrust class actions, including many of those listed in the firm biography. *See. e.g., Ross v. Bernhard,* 396 U.S. 531; *Rosenfeld v. Black,* 445 F.2d 137 (2d Cir. 1971); *Wool v. Tandem,* 818 F.2d 1433 (9th Cir.); *In re Salomon Bros. Treasury Litig,* 9 F.3d 230 (2d Cir.). In 2008 he appeared before the United States Supreme Court to argue that scheme liability is actionable under Section 10(b) and Rule 10b-5(a) and (c). *See StoneRidge Investment Partners v. Scientific-Atlanta,* No. 06-43 (2007). Other examples of cases where he was the Lead or Co-Lead counsel for plaintiffs and the class include: *In re Salomon Brothers Treasury Litigation,* 91 Civ. 5471 (S.D.N.Y. 1994) ($100 million cash recovery); *In re First Executive Corporation Securities Litigation,* CV-89-7135 (C.D. Cal. 1994) ($100 million settlement); *In re Sorbates Direct Purchaser Antitrust Litigation,* C98-4886 (N.D. Cal. 2000) (over $80 million settlement for the class).

In 1992, Senior Judge Milton Pollack of the Southern District of New York appointed Mr. Grossman to the Executive Committee of counsel charged with allocating to claimants hundreds of millions of dollars obtained in settlements with Drexel Burnham & Co. and Michael Milken.

Many courts have acknowledged the high quality of legal representation provided to investors by Mr. Grossman. In *Gartenberg v. Merrill Lynch Asset Management, Inc.,* 79 Civ. 3123 (S.D.N.Y.), where Mr. Grossman was lead trial counsel for plaintiff, Judge Pollack noted at the completion of the trial:

> *[I] can fairly say, having remained abreast of the law on the factual and legal matters that have been presented, that I know of no case that has been better presented so as to give the Court an opportunity to reach a determination, for which the court thanks you.*

Mr. Grossman was also the lead trial attorney in *Rauch v. Bilzerian* (Super. Ct. N.J.)(directors owed the same duty of loyalty to preferred shareholders as common shareholders in a corporate takeover), where the court described the Pomerantz team as "exceptionally competent counsel." He headed the six week trial on liability in *Walsh v. Northrop Grumman* (E.D.N.Y.) (a securities and ERISA class action arising from Northrop's takeover of Grumman), after which a substantial settlement was reached.

Mr. Grossman is frequently invited to speak at law schools and professional organizations. In 2009, Mr. Grossman was a featured speaker at the Practicing Law

Institute's Securities Litigation and Enforcement Institute and a panelist in a Practicing Law Institute "Hot Topic Briefing" entitled "*StoneRidge*- Is There Scheme Liability or Not?" He was a panelist at an April 2008 Conference sponsored by the Institute for Law and Economic Policy, entitled "The Continuing Evolution of Securities Class Actions." Mr. Grossman also participated as a panelist on securities litigation developments at the 2008 annual meeting of the ABA Section of Litigation. Mr. Grossman is the author of "Commentary: The Social Meaning of Shareholder Suits," 65 BROOKLYN LAW REV. (1999), among other articles.

Mr. Grossman is a nationally respected authority on the subject of corporate governance. He served on former New York State Comptroller Carl McCall's Advisory Committee for the NYSE Task Force on corporate governance. He is a regular advisor to Congress on legislation to protect investors and is a former president of the National Association of Securities and Consumer Trial Attorneys ("NASCAT") During his tenure at NASCAT, he represented the organization in meetings with the Chairman of the Securities and Exchange Commission and before members of Congress and of the Executive Branch concerning legislation that became the PSLRA.

Mr. Grossman is recognized for his commitment to ethical practices and the enhanced quality of legal representation. He served for three years on the New York City Bar Association's Committee on Ethics, as well as on the Association's Judiciary Committee, which interviewed and evaluated the qualification of judicial candidates. He is also actively involved in civic affairs. He headed a task force on behalf of the Association, which, after a wide-ranging investigation, made recommendations for the future of the City University of New York. He serves on the board of the Appleseed Foundation, a national public advocacy group and is a director of the Lincoln Center Institute for the Arts in Education.

Mr. Grossman is admitted to practice in New York, the United States District Courts for the Southern and Eastern Districts of New York, Central District of California, Eastern District of Wisconsin, District of Arizona, District of Colorado, the United States Courts of Appeals for the First, Second, Third, Ninth and Eleventh Circuits, and the United States Supreme Court.

## MARC I. GROSS

Mr. Gross is a senior partner of Pomerantz. For over three decades, he has focused on securities fraud class actions and derivative actions, while also litigating antitrust and consumer cases. Mr. Gross heads the Firm's Institutional Investor Practice and New Case Groups. He is Lead Counsel in many of the Firm's major pending cases, including Chesapeake, where he represents the Louisiana Municipal Police Employees' Retirement System in challenging a grant of $75 million bonus to a CEO, in a year when the company's profits plunged and its stock price fell 60%.

Mr. Gross has extensive trial experience, including *In re Zila Inc. Securities Litig., (D.C. Ariz. (PHX))* and *In re Zenith Labs Securities Litig., (D.C. N.J.)* He is Lead Counsel in many of the Firm's major pending cases.

Mr. Gross has obtained numerous large recoveries. He was sole Lead Counsel in *In re Charter Communications Inc. Sec. Litig.*, MDL No. 1506 (E.D. Mo.), a case in which the court lauded the Firm's efforts in obtaining a $146.25 million settlement. He was also Co-Lead Counsel in *Snyder v. Nationwide Insurance Co.*, Index No. 97/0633 (N.Y. Supreme Court, Onondaga County), which resulted in a settlement valued at $100 million for defrauded life insurance policy customers in New York. Approving the settlement, Judge James C. Tormey stated:

> *The Court approves the settlement in all respects. It is so ordered, and I compliment you all, not only the manner in which you arrived at this result today, but the time that you – in which it was done. And I think you all did a very, very good job for all the people. You made attorneys look good. I thank you very much. It was nice working with you all.*

Mr. Gross was the attorney-in-charge of *Texas Int'l Co. Sec. Litig.* (W.D. Okla.), where, in granting class certification, the Court observed:

> *The performance of plaintiffs' counsel thus far leaves the Court with no doubt that plaintiffs' claims will be vigorously and satisfactorily prosecuted throughout the course of this litigation.*

In the course of approving the subsequent settlement of the case, the Court added:

> *I would like to compliment all the parties and attorneys in this case. . . . You have all worked together better than I think any case I've had that involved these extensive issues and parties and potential problems. And I for one appreciate it. And I think it shows certainly a great deal of professionalism on all your part.*

Other examples of Mr. Gross' representation as sole or Co-Lead Counsel are: *In re Elan Corp. Sec. Litig.*, No. 02-CV-865 (S.D.N.Y.) ($75 million settlement); *In re Salomon Analysts AT&T Litig.*, No. 02-CV-865 ($74.75 million settlement) (S.D.N.Y.); *In re National Health Labs., Inc. Securities*, CV-92-1949-H (S.D. Cal. 1995) ($64 million recovery); *In re American Italian Pasta Co. Sec. Litig*, No 05-CV0725-W-ODS (S.D.N.Y.) ($28.5 million settlement); *Mardean Duckworth v. Country Life Insurance Co*, No. 98 CH 01046 (C.D. Ill. 2000) ($45 million settlement); and *Frank v. Paul (Centrust Savings Bank Securities Litigation)*, 93 Civ. 1453 (E.D.N.Y. 1996) (over $20 million recovery). He was a member of the Plaintiffs' Executive Committee in *In re Transkaryotic Therapies Sec. Litig.* 03-cv-10165-RWZ (D. Mass.), which has settled for $50 million (court approval of settlement has been requested);

Mr. Gross has been a member of the New York City Bar Association's Federal Courts Committee, an early neutral evaluator for the Eastern District of New York, and a mediator for the Commercial Division of the Supreme Court of the State of New York. He is currently a Vice President of the Institute of Law and Economic Policy ("ILEP"), a not-for-profit organization devoted to promoting academic research and dialogue in securities law issues and litigation, and for many years was an officer of NASCAT. He is a frequent speaker at legal forums on various shareholder-related issues, including Risk Management and Due Diligence (Brooklyn Law School, March 2009); Say-on-Pay (Vanderbilt Law School, March 2009); Basic 20 Years Later (Wisconsin Law School/ILEP November 2008/University of Arizona, April 2008); and the Scott/Paulson "Reform" Proposal (Duke, 2007). He also spoke on excess compensation at the Israeli Pension Fund Conference in October 2009.

Mr. Gross is the author of the journal article *"Loser-Pays - or Whose 'Fault' Is It Anyway: A Response to Hensler-Rowe's "Beyond 'It Just Ain't Worth It'"*, which appeared in 64 Law & Contemporary Problems (Duke Law School) (2001) in an issue addressing Complex Litigation at the Millennium.

Mr. Gross is active in civic affairs and served as Chairman of Neighbors Helping Neighbors, a not-for-profit housing group based in Brooklyn, New York.

Mr. Gross graduated from New York University Law School in 1976, and received his undergraduate degree from Columbia University in 1973.

Mr. Gross is admitted to practice in New York, the United States District Courts for the Southern and Eastern Districts of New York, the Western District of Missouri, District of Arizona, the United States Courts of Appeals for the First, Second, Third and Eighth Circuits, and the United States Supreme Court.

## SHAHEEN RUSHD

Shaheen Rushd graduated *summa cum laude* from New York Law School in 1981 and obtained her undergraduate degree from Kalamazoo College in 1977 (*magna cum laude*; elected to Phi Beta Kappa).

Ms. Rushd joined the Firm as an associate in January 1983 and became a partner in July 1991. Previously, Ms. Rushd was a staff attorney at the New York Regional Office of the Federal Trade Commission and served as law clerk to the Honorable Leonard I. Garth, Circuit Court Judge of the United States Court of Appeals for the Third Circuit. Ms. Rushd specializes in securities and antitrust class actions and is a member of the Firm's Institutional Investor Practice Group. She has participated in the litigation of many of the Firm's major cases, including *StoneRidge Investment Partners v. Scientific-Atlanta, Inc.; EBC I, Inc. v. Goldman Sachs & Co.; Comverse Technology, Inc. Sec. Litig ; Kronfeld v. TWA;* and *In re Safety-Kleen Corp. Stockholders Litigation.* She was also part of the successful trial teams in *Walsh v. Northrop Grumman, et al.,* CV-94-5105 (E.D.N.Y.) and *Rauch v. Bilzerian,* 88 Civ. 15624 (Super. Ct. N.J.).

Ms. Rushd was a trustee of Kalamazoo College from 1996 through June 2002. She has served as an Adjunct Instructor at New York Law School and was a member of the New York City Bar Association's Antitrust and Trade Regulation Committee. She is a member of the ABA Section of Business Law.

Ms. Rushd is admitted to practice in New York, the United States District Court for the Southern and Eastern Districts of New York, the United States Courts of Appeals for the Eighth and Eleventh Circuits, and the United States Supreme Court.

## PATRICK V. DAHLSTROM

Mr. Dahlstrom joined Pomerantz as an associate in the Fall of 1991 and became a partner in January 1996. He is the resident partner in the Firm's Chicago office.

Mr. Dahlstrom is a 1987 graduate of the Washington College of Law at American University in Washington, D.C., where he was a Dean's Fellow, Editor in Chief of the Administrative Law Journal, a member of the Moot Court Board representing Washington College of Law in the New York County Bar Association's Antitrust Moot Court Competition, and a member of the Vietnam Veterans of America Legal Services/Public Interest Law Clinic. Upon graduating, Mr. Dahlstrom served as the Pro Se Staff Attorney for the United States District Court for the Eastern District of New York and was a law clerk to the Honorable Joan M. Azrack, United States Magistrate Judge.

Mr. Dahlstrom is a member of the Firm's Institutional Investor Practice and New Case Groups. He is the partner-in-charge in many of the Firm's pending securities fraud class actions including *In re Sealed Air Corp. Sec. Litig.,* No. 03-CV-4372 (D.N.J.).

Mr. Dahlstrom's has extensive experience litigating cases under the PSLRA. In *In re Comverse Technology Sec. Litig.,* 2007 U.S. LEXIS 14878 (E.D.N.Y. 2007), Mr. Dahlstrom obtained an important clarification of how courts calculate the "largest financial interest" in connection with the selection of a lead plaintiff, in a manner consistent with *Dura,* 544 U.S. 336 (2005). In *DeMarco v. Robertson Stephens,* 2005 U.S. Dist. LEXIS (S.D.N.Y. 2005), he obtained the first class certification in a federal securities case involving fraud by analysts. Other notable litigations by Mr. Dahlstrom include *In re Safety-Kleen Stockholders Securities Litigation,* 3:00-736-17 (D. S.C.) (as Co-Lead Counsel, Firm obtained $54.5 million settlement); *In re Livent, Inc. Noteholders Securities Litigation,* 98 Civ. 7161 (S.D.N.Y.) (Firm, as sole Lead Counsel, obtained $17 million settlement, plus $36 million judgment (including interest)); and *In re Woolworth Corporation Securities Class Action Litigation,* 94 Civ. 2217 (S.D.N.Y.) (Firm, as Co-Lead Counsel, secured a $20 million settlement).

Mr. Dahlstrom was a member of the trial team in *In re ICN/Viratek Securities Litigation,* 87 Civ. 4296 (S.D.N.Y.), which after trial, settled for $14.5 million. The court praised the trial team stating:

> *[P]laintiffs' counsel did a superb job here on behalf of the class. . . This was a very hard fought case. You had very able, superb opponents, and they put you to your task. . . The trial work was beautifully done and I believe very efficiently done. .*

Mr. Dahlstrom is admitted to practice in New York and Illinois, as well as the United States District Courts for the Southern and Eastern Districts of New York, Northern District of Illinois, Northern District of Indiana, Eastern District of Wisconsin, District of Colorado, Western District of Pennsylvania, the United States Courts of Appeals for the Fourth, Sixth, Seventh and Eight Circuits, and the United States Supreme Court.

## D. BRIAN HUFFORD

D. Brian Hufford joined the Pomerantz Firm in April 1993 and became a partner in July 1995. After obtaining a Masters of Urban Affairs from Wichita State University in 1982, Mr. Hufford attended the Yale Law School, where he was Notes and Topics Editor for the *Yale Law and Policy Review* and was awarded the Thomas I. Emerson Prize for the Outstanding Legislative Services Project. After graduating from Yale in 1985, Mr. Hufford spent two years in Washington, D.C. as an Honors Attorney in the United States Department of the Treasury's Honors Law Program. From 1987 until he joined the Firm in 1993, he was a litigation associate at Davis Polk & Wardwell, where he worked primarily on securities and class actions. His article "*Deterring Fraud vs. Avoiding the Strike Suit: Reaching an Appropriate Balance,*" was published in 61 *Brooklyn Law Rev.* 593 (Summer 1995).

Resident in the Firm's Columbus, Ohio office, Mr. Hufford has prosecuted not only a number of securities and antitrust cases, but is also the attorney-in-charge of the Firm's Insurance Practice Group. As Co-Lead Counsel, he obtained the $200 million cash settlement in *Wachtel v. Health Net, Inc.*, No. 01-CV-4183 (D.N.J.), one of the largest settlements ever reached in a health insurance litigation. Mr. Hufford's efforts have set numerous important precedents. *See, e.g., Batas v. Prudential*, 281 A.D.2d 260, 724 N.Y.S.2d 3 (1st Dep't 2001), (court upheld the adequacy of pleading of the claim that Prudential relied on improper procedures for the determination of medical necessity in its health insurance contracts); *Drolet v. Healthsource, Inc.*, 968 F. Supp. 757 (D.N.H. 1997) (motion to dismiss denied, with court ruling that plaintiff had adequately alleged that defendant breached fiduciary duties under ERISA by misrepresenting the financial incentives it paid to physicians to reduce medical expenditures); *American Medical Association v. United Healthcare Corp.*, 2002 U.S. Dist. LEXIS 20309 (S.D.N.Y. Oct. 23, 2002) (motion to dismiss denied where plaintiffs claimed that the defendant relied on an improper database for determining "usual, customary and reasonable" fees for the purpose of reimbursing subscribers for services received from out-of-network health care providers). Mr. Hufford was also the partner-in-charge in *Addison v. American Medical Security*, Case No. CA 001455-AB (Cir. Ct., Palm Beach Cty., Fla.), in which plaintiffs won a two-week bench trial.

Mr. Hufford has written and lectured in the area of healthcare litigation. The court in *Orthopaedic Surgery Associates of San Antonio v. Prudential Health Car Plan, Inc.*, quoted extensively an article written by Mr. Hufford for a PLI Seminar, entitled "*Managed Care Litigation: The Role of Providers,*" 1216 PLI/Corp. 487 (Nov. 2000), citing it as "instructive." He served as a panelist for a forum sponsored by the American Corporate Counsel Association entitled "Considerations in Deciding Whether to Mediate, Arbitrate or Litigate Business Disputes." Further Mr. Hufford was featured in the book *Net Law: How Lawyers Use the Internet*, by Paul Jacobsen (Jan. 1997), which discusses how he has effectively used the Internet to investigate some of the firm's pending class actions.

Mr. Hufford is admitted to practice in New York and Ohio, the United States District Courts for the Southern and Eastern District of New York, and the United States Courts of Appeals for the Second and Third Circuits.

## DANIEL L. BERGER

Daniel L. Berger, a Pomerantz partner, graduated from Haverford College in 1976 and from Columbia Law School in 1979 where he was a Harlan Fiske Stone Scholar.

Prior to joining Pomerantz, Mr. Berger was a senior partner at Bernstein Litowitz Berger & Grossmann, where he litigated complex securities and discrimination class actions for 22 years. While at Bernstein, Mr. Berger tried two 10b-5 securities class actions to jury verdicts, among the very few such cases ever tried. He has served as principal Lead Counsel in many of the largest securities litigations in history, achieving successful recoveries for classes of investors in cases including *In re Cendant Corp. Sec. Litig.*, (D.N.J.) ($3.3 Billion); *In re Lucent Technologies, Inc. Sec. Litig.* (D.N.J.) ($675 Million); *In re Bristol-Myers Squibb Sec. Litig.*, (S.D.N.Y.) ($300 Million); *In re Daimler Chrysler A.G. Sec. Litig.*, (D. Del.) ($300 Million); *In re Conseco, Inc. Sec. Litig.*, (S.D. Ind.) ($120 Million); *In re Symbol Technologies Sec. Litig.*, (E.D.N.Y.) ($139 Million); and *In re OM Group Sec. Litig.*, (N.D. Ohio) ($92 Million). Mr. Berger has successfully argued several appeals that made new law favorable to investors, including *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256 (3d Cir. 2005); *McCall v. Scott*, 250 F.3d 997 (6th Cir. 2001) and *Fine v. American Solar King Corp.*, 919 F.2d 290 (5th Cir. 1990). In addition, Mr. Berger was lead class counsel in several important discrimination class actions, in particular *Roberts v. Texaco, Inc.* (S.D.N.Y.), where he represented African-American employees of Texaco and achieved the largest settlement ($175 Million) of a race discrimination class action.

Mr. Berger's work has received praise from many federal courts. Commenting on the settlement achieved in *McCall v. Scott* (M.D. Tenn.), one of the most significant recoveries in a derivative action, the Court wrote:

> *[The settlement] confers an exceptional benefit upon the company and the shareholders by way of the corporate governance plan....Counsel's excellent qualifications and reputations are well documented in the record, and they have litigated this complex case adeptly and tenaciously throughout the six years it has been pending. They assumed an enormous risk and have shown great*

> patience by taking this case on a contingent basis, and despite an early setback
> they have persevered and brought about not only a large cash settlement but
> sweeping corporate reforms that may be invaluable to the beneficiaries.

In addition, Mr. Berger's outstanding work as lead trial counsel in *In re ICN/Viratek Sec. Litig.* (S.D.N.Y.) was noted by the court, which said:

> [P]laintiffs' counsel did a superb job here on behalf of the class. . . This was a
> very hard fought case. You had very able, superb opponents, and they put you
> to your task. . . The trial work was beautifully done and I believe very efficiently
> done. . .

Mr. Berger was a member of the Board of Managers of Haverford College from 2000-2003 and currently serves on the Board of Visitors of Columbia Law School. He served on the Board of inMotion, Inc., a non-profit organization providing legal services to victims of domestic violence, for six years, and currently is a member of the Board of Madison Square Park Association.

Mr. Berger is admitted to practice in New York, the United States District Courts for the Southern and Eastern Districts of New York, and the United States Courts of Appeals for the Second, Third, Fifth, Sixth, Seventh, Ninth and Tenth Circuits.

## ROBERT J. AXELROD

Robert J. Axelrod, a Pomerantz partner, practices securities, antitrust, and insurance litigation. As a member of the Firm's Insurance Practice Group, Mr. Axelrod, together with partner, Brian Hufford, is litigating cases on behalf of a number of medical associations and subscribers, against such insurers as United Healthcare Corporation, CIGNA, Aetna, Wellpoint, First American Title Insurance Company, Commonwealth Land Title Insurance Company and Fidelity. Mr. Axelrod was on the successful trial team in the action against American Medical Security. Mr. Axelrod was also part of the Pomerantz Litigation team in *Wachtel v. Health Net Inc.* ($200 million cash settlement); and *Steinberg v. Nationwide Mutual Ins. Co.* (E.D.N.Y.) (settlement equivalent to 50% of total damages possible had statute of limitation been waived and had additional defendants been joined).

Mr. Axelrod serves as a member of the Class Action Committee of the New York State Bar Association. He is a member of the Temple University College of Liberal Arts Alumni Board, and serves as a trustee and General Counsel of Temple Beth El in Huntington, New York.

Mr. Axelrod is admitted to practice in New York, the United States District Courts for the Southern and Eastern Districts of New York, and the United States Courts of Appeals for the Second and Third Circuits.

## MICHAEL M. BUCHMAN

Michael M. Buchman, a Pomerantz partner, has litigated complex antitrust and consumer protection class action for over ten years. Mr. Buchman served as an Assistant Attorney General in the Antitrust Bureau of the New York State Attorney General's Office after receiving an LL.M. in international antitrust and trade law from Fordham University School of Law. Mr. Buchman received his J.D. from The John Marshall Law School. Over the past several years, Mr. Buchman has spearheaded an effort to challenge anticompetitive conduct by pharmaceutical companies designed to artificially inflate the price of brand new prescriptions drugs. He has served as Co-Lead counsel in a number of "generic drug" cases, including *In re Buspirone Antitrust Litig.*, MDL 1413 (S.D.N.Y.) (obtaining a $90m settlement); *In re Relafen Antitrust Litig.*, 01-CV-12222 (D. Mass.) (obtaining a $75m settlement); and *In re Augmentin Antitrust Litig.*, 02 Civ. 445 (E.D. Va. Norfolk Div.) (obtaining a $29m settlement). Some of the settlements achieved by Mr. Buchman have resulted in substantial "cy pres" monetary awards for well known charitable organizations. For example, in *Augmentin*, awards exceeding $100,000 were donated on a "cy pres" basis to St. Jude Children's Research Hospital and Children's Rights of New York.

Mr. Buchman's efforts have been acknowledge by courts. Former Chief Judge William G. Young noted in *Relafen*

> *[t]his proposed settlement is the result of a great deal of very fine lawyering . .*

Similarly, in *Buspirone*, Judge John G. Koeltl stated:

> *Let me say that the lawyers in this case have done a stupendous job. They really have.*

His "tenacious and skillful" work has also been recognized outside of the "generic drug" cases by Judge Lewis A. Kaplan of the Southern District of New York in an international antitrust class action brought on behalf of foreign purchasers and sellers of works of art sold at auction by Christie's and Sotheby's, which resulted in a $40 million settlement.

Mr. Buchman was actively involved in *In re NASDAQ Market-Makers Antitrust Litig.*, MDL 1023 (S.D.N.Y.) (resulting in a $1.027 billion settlement) and *In re Visa Check/Mastermoney Antitrust Litigation*, CV 96-CV-5238 (E.D.N.Y.) (resulting in a $3billion settlement), two of the largest antitrust settlements in the over one hundred year history of the Sherman Act.

Mr. Buchman frequently speaks on antitrust and consumer protection class action issues. On February 7, 2007, he spoke at the 4th National In-House Counsel Conference on Managing Complex Litigation on class certification issues. In 2002, he was interviewed by and appeared on the CBS Evening News in connection with generic drug litigation. That same year, he presented at the Practicing Law Institute's 10th Annual

Consumer Financial Services Litigation on Recent Developments in State Unfair Deceptive Acts and Practices Statutes and Private Attorney General Litigation.

Mr. Buchman has also authored or co-authored articles on procedure or competition law, including a Task Force on Dealer Terminations for The Association of the Bar of the City of New York, Committee on Antitrust and Trade Regulation entitled *Dealer Termination in New York* dated June 1,1998, and *What's in a Name — the Diversity Death-Knell for Underwriters of Lloyd's of London and their Names; Humm v. Lombard World Trade, Inc.,* Vol. 4, Issue 10 International Insurance Law Review 314 (1996).

Mr. Buchman is admitted to practice in New York and Connecticut, the United States District Courts for the Southern and Eastern Districts of New York, District of Connecticut, and District of Arizona, the United States Court of Appeals for the Second Circuit, the United States Court of International Trade and the United States Supreme Court.

## JASON S. COWART

Jason S. Cowart, a Pomerantz partner, graduated *cum laude* from Northwestern University Law School in 1999.   While in law school, he won the Moot Court competition and was an editor of the Journal of International Law and Business.

After law school, Mr. Cowart served as a law clerk to United States District Court Judge Richard Enslen.  Prior to joining the Pomerantz Firm, Mr. Cowart was a litigation associate at Sidley Austin Brown & Wood LLP for over four years.  During that time, Mr. Cowart concentrated his practice on complex commercial litigation including antitrust, contract, fraud, and health care-related matters.

Mr. Cowart is the co-author of *State Immunity, Political Accountability and Alden v. Maine,* 75 Notre Dame L. Rev. 1069 (2000).

Mr. Cowart is admitted to practice in New York and the District of Columbia., the United States District Court for the Southern and Eastern Districts of New York, Western District of Michigan, and the District of Columbia. Mr. Cowart also is admitted to practice before the United States Supreme Court.

## CHERYL D. HAMER

Cheryl D. Hamer joined Pomerantz in January 2003, and became a partner in January 2007. She is the resident partner in the Firm's Washington, DC office.

Ms. Hamer is a 1973 graduate of Columbia University and a 1983 graduate of Lincoln University Law School. She studied tax law at Golden Gate University and holds a Certificate in Journalism from New York University

Ms. Hamer has long experience working with Public and Taft-Hartley pension and welfare funds. As a member of the Firm's Institutional Investor Practice Group, she has

been involved in a number of cases, including securities *In re American Italian Pasta Co. Sec. Litig.* and *In re Symbol Technologies, Inc. Sec. Litig*

Before joining Pomerantz, Ms. Hamer served as Of Counsel to nationally known securities class action law firms focusing on plaintiff securities fraud litigation. In private practice for over 20 years, she has litigated, in both state and federal courts, Racketeer Influenced and Corrupt Organizations, Continuing Criminal Enterprise, death penalty and civil rights cases. She has also authored numerous criminal writs and appeals.

Ms. Hamer was an Adjunct Professor at Pace University, Dyson College of Arts and Sciences, Criminal Justice Program and The Graduate School of Public Administration, where she taught Non-Profit Corporate Law, from 1996 to 1998.

Ms. Hamer currently serves as a pro bono attorney for the Mid-Atlantic Innocence Project. She has served as vice-chair of Freeing the Innocent Imprisoned Committee, chair and vice-chair of the Death Penalty Litigation Committee, Liaison to American Bar Association, and a member of the Nominating Committee of the National Association of Criminal Defense Lawyers and as a Liaison to the American Bar Association. She has served on numerous non-profit boards of directors including Shelter From the Storm, the Native American Preparatory School and the Southern California Coalition on Battered Women for which she received a community service award. She is a member of the Litigation and Individual Rights and Responsibilities Sections of the American Bar Association, the Corporation, Finance & Securities Law and Criminal Law and Individual Rights Sections of the District of Columbia Bar, the litigation and International Law Sections of the California State Bar, and the National Association of Public Pension Attorneys (NAPPA).

Ms. Hamer is admitted to practice in the State of California, the District of Columbia and the State of New Mexico, the United States District Court for the Northern, Southern, Eastern and Central Districts of California, the District of New Mexico, the District of Columbia, the United States Courts of Appeals for the Second, Third, Fourth, Seventh, Ninth, Tenth and Eleventh Circuits, and the United States Supreme Court.

## H. ADAM PRUSSIN

H. Adam Prussin, a Pomerantz partner, graduated *cum laude* from Yale College in 1969, and, after obtaining a Masters Degree from the University of Michigan in 1971, received his J.D. from Harvard Law School in 1974.

In addition to securities litigation, Mr. Prussin has extensive experience prosecuting shareholder derivative actions. Mr. Prussin was special litigation counsel in the derivative actions on behalf of Summit Metals, Inc., which resulted in entry of judgment, after trial, of $43 million in cash, plus an order transferring the stock of two multi-million-dollar companies to the plaintiff. Mr. Prussin is Co-Lead Counsel in several of the Firm's pending derivative actions.

Mr. Prussin has published several articles on the subject of the standards and procedures for obtaining dismissal of shareholder derivative actions, including "*Termination of Derivative Suits Against Directors on Business Judgment Grounds: From Zapata to Aronson*," 39 The Business Lawyer 1503, 1984; "*Dismissal of Derivative Actions Under the Business Judgment Rule: Zapata One Year Later*," 38 The Business Lawyer 401, 1983; and "*The Business Judgment Rule and Shareholder Derivative Actions: Viva Zapata?*," 37 The Business Lawyer 27, 1981. In June 2009 he spoke at the 6th Annual Securities Litigation Conference in New York, participating in the panel discussion, "From Behind Enemy Lines: The Perspective of Two Prominent Plaintiff Attorneys."

Before joining the Firm, Mr. Prussin was a named partner in Silverman, Harnes, Harnes, Prussin & Keller, which specializes in representing plaintiffs in shareholder derivative and class action litigation, particularly those involving self-dealing by corporate officers, directors and controlling shareholders. Mr. Prussin played a key role in several landmark derivative cases in the Delaware courts, and has appeared frequently before the Delaware Supreme Court.

Before joining Silverman, Harnes in 1994, Mr. Prussin was Of Counsel to Weil, Gotshal & Manges. While there, he represented numerous corporate defendants in shareholder derivative actions and class actions, and also in general commercial, bankruptcy and antitrust disputes.

Mr. Prussin is admitted to practice in New York, the United States District Courts for the Southern and Eastern Districts of New York and the United States Court of Appeals for the Second, Ninth and D.C. Circuits.

## MURIELLE STEVEN WALSH

Murielle Steven Walsh, a Pomerantz partner, graduated *cum laude* from New York Law School in 1996, where she was the recipient of the Irving Mariash Scholarship. During law school, Ms. Steven Walsh interned with the Kings County District Attorney's Office and worked within the mergers and acquisitions group of Sullivan & Cromwell.

At Pomerantz, Ms. Steven Walsh specializes in securities and corporate governance-related litigation. Ms. Steven Walsh was part of the trial team in *Lewis v. Beall*, a derivative action in California state court that focused on the duties of corporate directors. More recently, in *In re Livent Noteholders' Securities Litigation*, Ms. Steven Walsh was one of the lead attorneys prosecuting this securities class action against the company's former chief executive officers, and in that case convinced the Second Circuit to uphold the district court's grant of summary judgment on behalf of plaintiffs. She is also part of the team working on the *EBC I v. Goldman Sachs* case.

Ms. Steven Walsh currently serves as a member of the editorial board for Class Action Reports. She previously served as a Solicitor for the Legal Aid Associates Campaign,

and has been involved in political asylum work with the Association of the Bar of the City of New York.

Ms. Steven Walsh is admitted to practice in New York and in the United States District Courts for the Southern and Eastern Districts of New York, and the United States Court of Appeals for the Second Circuit.

## JOSHUA B. SILVERMAN

Joshua B. Silverman is Of Counsel to Pomerantz. He is a 1993 graduate of the University of Michigan, where he received *Phi Beta Kappa* honors, and a 1996 graduate of the University of Michigan Law School.

Mr. Silverman specializes in securities litigation with an emphasis on litigation involving structured financial instruments. He serves as Co-Lead counsel for three large public funds in litigation related to Countrywide's mortgage-backed securities. Mr. Silverman played a key role in the Firm's representation of investors before the United States Supreme Court in *StoneRidge*, and is engaged in the prosecution of many of the Firm's pending class cases, including *In re Sealed Air Corp. Sec. Litig*.

Before joining Pomerantz, Mr. Silverman practiced at McGuireWoods LLP and its Chicago predecessor, Ross & Hardies, where he represented one of the largest independent futures commission merchants in commodities fraud and civil RICO cases. Mr. Silverman also spent two years as a securities trader.

Mr. Silverman is admitted to practice in Illinois, the United States District Court for the Northern District of Illinois, the United States Courts of Appeals for the Seventh and Eighth Circuits, and the United States Supreme Court.

## LEIGH HANDELMAN SMOLLAR

Leigh Handelman Smollar is Of Counsel to Pomerantz. She graduated from Chicago-Kent College of Law in 1996, and spent the next five years specializing in complex litigation, handling a broad variety of matters. She has been associated with the Firm since January 2002. Ms. Handelman Smollar specializes in securities fraud litigation.

Ms. Handelman Smollar co-authored an article for the Illinois Institute for Continuing Legal Education (IICLE) entitled "*Shareholder Derivative Suits and Stockholder Litigation in Illinois*," published in IICLE Chancery and Special Remedies 2004 Practice Handbook.

Ms. Handelman Smollar is admitted to practice in Illinois, the United States District Court for the Northern District of Illinois, Eastern District of Missouri, and the United States Courts of Appeals for the Seventh and Eighth Circuits.

## JAY D. DEAN

Jay D. Dean graduated in 1988 from Yale Law School. While at Yale, Mr. Dean was Senior Editor of the Yale Journal of International Law. In 2009, he became an associate at Pomerantz, where he focuses on insurance litigation.

For many years, Mr. Dean served as an Assistant Corporation Counsel in the Office of the Corporation Counsel of the City of New York, most recently in its Pension Division, which represents the Trustees of the City's five pension funds.

Prior to that, Mr. Dean was a litigation associate with the firms of Berlack Israels & Liberman (currently known as Brown Rudnick LLP), Shea & Gould, and Curtis, Mallet-Prevost, Colt & Mosle LLP., where he had extensive involvement in commercial and securities matters. His experience includes criminal defense of junk bond underwriter Drexel Burnham Lambert, the successful jury trial of a bank's claims against its fidelity bond issuer and trial preparation on behalf of institutional plaintiffs in the *Wedtech* securities litigation.

Mr. Dean was co-author of chapters entitled "Criminal Forfeiture" and "Racketeer Influenced and Corrupt Organizations" in the *Criminal Defense Techniques* treatise published by Matthew Bender in 1990.

Mr. Dean is admitted to practice in New York and the United States District Courts for the Southern and Eastern Districts of New York, and the Second Circuit Court of Appeals.

## JESSICA N. DELL

Jessica Dell graduated from CUNY School of Law in 2005. At CUNY Ms. Dell participated in three semesters of the school's award winning clinical programs where she represented indigent clients in family court and filed comprehensive applications for immigration relief under the Violence Against Women Act.

In addition to her clinical work she has interned at the Urban Justice Center, National Advocates for Pregnant Women, and at Human Rights Watch, where she was the recipient of an Everrett fellowship for her work in the HIV/AIDS division.

Ms. Dell focuses on the prosecution of securities fraud litigation.

## R. JAMES HODGSON

Jim Hodgson graduated from the University of Pennsylvania Law School in 2003. While in law school, he served as a judicial intern to the Honorable John F. Keenan, United States District Judge, Southern District of New York. He also served as a Senior Editor of the University of Pennsylvania Law Review and, upon graduation, was recognized with an award for "Exemplary Public Service while at Penn Law School."

Following law school, Mr. Hodgson was associated with the law firm of Fried, Frank, Harris, Shriver & Jacobson LLP for nearly four years. At Fried, Frank, Mr. Hodgson focused his practice on general commercial and securities litigation, regulatory defense, copyright enforcement, and white-collar criminal defense. In addition, he has tried (on a pro bono basis) numerous asylum law cases on behalf of refugees seeking asylum protection in the United States.

Mr. Hodgson focuses on the prosecution of securities fraud litigation.

Mr. Hodgson is admitted to practice in New York, the United States District Courts for the Southern and Eastern Districts of New York and the United States Court of Appeals for the Second Circuit. He is a member of the Association of the Bar of The City of New York.

## ADAM G. KURTZ

Adam G. Kurtz graduated cum laude from New York Law School in 1988, where he was Book Review Editor of the New York Law School Law Review. In June 2009, Mr. Kurtz received an MBA from the Baruch/Mt. Sinai Graduate Program in Health Care Administration. He is a member of the American Health Lawyers Association.

Following law school, Mr. Kurtz served as a law clerk to the Honorable Juan G. Burciaga, then Chief United States District Judge, District of New Mexico and began his career as a litigation associate at Cravath, Swaine & Moore, where he worked on complex securities fraud and antitrust litigation. He was a solo practitioner in New Mexico where he concentrated on federal criminal defense and civil litigation. In addition, Mr. Kurtz served as an Assistant Corporation Counsel in the General Litigation and Labor and Employment law divisions of the New York City Law Department.

Mr. Kurtz focuses on the prosecution of complex antitrust litigation.

Mr. Kurtz is admitted to practice in New York and the United States District Courts for the Southern and Eastern Districts of New York.

## JEREMY A. LIEBERMAN

Jeremy A. Lieberman graduated from Fordham University School of Law in 2002. While in law school, Mr. Lieberman served as a staff member of the Fordham Urban Law Journal.

Upon graduation, Mr. Lieberman began his career at Chadbourne & Parke LLP as a litigation associate, where he specialized in complex commercial litigation and products liability.

Mr. Lieberman focuses on the prosecution of securities fraud litigation.

He is a member of the New York State Bar Association. He is admitted to practice in New York and the United States District Courts for the Southern and Eastern Districts of New York.

## FEI-LU QIAN

Fei-Lu Qian graduated from Albany Law School of Union University in 2003. Mr. Qian was Associate Editor of the Albany Law Review. While in law school, he interned at the New York State Office of the Attorney General.

Mr. Qian began his legal career as an associate at Lovell Stewart Halebian LLP, where his area of practice was securities litigation.

Mr. Qian focuses on the prosecution of securities fraud litigation.

Mr. Qian is admitted to practice in New York and the United States District Courts for the Southern and Eastern Districts of New York.

## TAMAR A. WEINRIB

Tamar A. Weinrib graduated from Fordham University School of Law in 2004 and, while there, participated in and coached Moot Court competitions.

After law school, Ms. Weinrib worked as a litigation associate in the New York office of Clifford Chance US LLP for over three years, where she focused on complex commercial litigation.  In addition, she was involved in pro bono cases, including a criminal appeal and a housing dispute filed with the Human Rights Commission.

Ms. Weinrib focuses on the prosecution of securities fraud litigation.

Ms. Weinrib is admitted to practice in New York and the United States District Courts for the Southern and Eastern Districts of New York.

## SUSAN J. WEISWASSER

Susan J. Weiswasser graduated from Brooklyn Law School in 2000. While in law school, she served as a law clerk intern to the Honorable Edward R. Korman, Judge of the United States District Court for the Eastern District of New York. She also served as a legal intern with the New York State Capital Defender Office. As an attorney, she has worked with the Monday Night Law and Pro Bono Bankruptcy Clinics of The City Bar.

Ms. Weiswasser's practice focuses on insurance and securities litigation.

Ms. Weiswasser is a member of the New York City Bar Association. She is admitted to practice in New York, the United States District Courts for the Southern and Eastern Districts of New York, and the United States Court of Appeals for the Third Circuit.